# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 1:19-cv-08454 |
| TODAY'S GROWTH CONSULTANT, INC. | : | (filed in the United States District |
| (dba THE INCOME STORE) | : | Court, Northern District of Illinois) |
| | : | |
| and | : | |
| | : | |
| KENNETH D. COURTRIGHT, III, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| MELANIE E. DAMIAN, AS RECEIVER OF | : | ANCILLARY CASE NO. |
| TODAY'S GROWTH CONSULTANT, INC. | : | |
| (dba THE INCOME STORE), | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CONKLIN WEB PROPERTIES, LLC d/b/a | : | |
| CONKLIN MEDIA, CONKLIN MEDIA LLC, | : | |
| CONKLIN & COURTRIGHT LLC, | : | |
| PROSPECT MX, LLC, DAVE CONKLIN, | : | |
| JODI CONKLIN, EMILY LASKO | : | |
| and HALEY HIRTHLER | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Melanie E. Damian, the court-appointed receiver (**"Plaintiff"** or the **"Receiver"**) in the above-captioned enforcement action, files this Complaint stating claims for fraudulent transfers, unjust enrichment, and aiding and abetting fraud and breach of fiduciary duties against Defendants, Conklin Web Properties, LLC d/b/a Conklin Media, Conklin Media LLC, Conklin

{02040296;v3 }

& Courtright LLC, Prospect MX, LLC, Dave Conklin, Jodi Conklin, Emily Lasko, and Haley Hirthler (collectively, the **"Defendants"**), and states:

## PROCEDURAL HISTORY

1.     On December 30, 2019, the United States District Court for the Northern District of Illinois, Civil Action No. 1:19-cv-08454, entered a Temporary Restraining Order Freezing Assets and Imposing Other Emergency Relief [ECF No. 20] (**"TRO"**) and an Order Appointing Receiver [ECF No. 19] (**"Appointment Order"**) in this Securities and Exchange Commission (**"SEC"**) enforcement action (the **"SEC Action"**).

2.     The TRO ordered all of the Defendants' assets frozen to preserve the *status quo*. *See* ECF No. 20 at pp. 6-7. Further, the TRO ordered the preservation of all Defendants' documents, books and records concerning (1) the allegations of the Complaint, (2) any securities offered for sale by Defendant Today's Growth Consultant, Inc. (dba The Income Store) (**"TGC"** or the **"Receivership Defendant"**)[1], including, but not limited to Consulting Performance Agreements (each an **"Agreement"** and collectively, the **"Agreements"**), (3) any communications with, between, or among either Defendant. *See* ECF No. 20 at pp. 7-8.

3.     The Receiver's mandate was to take all actions necessary to implement the terms of the TRO by, among other things, taking possession, custody and control of all of Defendants' assets, establishing control of TGC's business, ensuring that Defendants' assets were frozen and preventing their withdrawal or misapplication, obtaining and preserving documents and records pertaining to Defendants' assets, transactions, and business operations, and performing all acts necessary to protect and preserve the Receivership Estate. *See* ECF No. 19 at pp. 2-4.

---

[1] Capitalized terms herein not otherwise defined are given the definition ascribed to such terms in the Court's Orders.

{02040296;v3 }

4.      The Receiver analyzed the business operations, including projected and historic income and expenses and determined that without additional investor funds the operations were not sustainable even in the short term. Even with substantial infusion of investor funds, the TGC/Income Store records indicate a loss in 2018 of $5.7 million and in 2019 of $7.5 million. Indeed, the payroll expense alone exceeded TGC's website/e-commerce revenue.

5.      The Receiver's review of TGC's books and records confirm the SEC's allegations that new investor funds and loans, and not website revenue, were used to pay the investors/website partners. For example, in 2018 website revenue was under $2 million while the purported website payout to investors was approximately $12.7 million; and, likewise, in 2019 website revenue was under $4 million while the purported website investor payout was $16.5 million. In short, TGC's business was a Ponzi scheme orchestrated by Courtright.

6.      On March 2, 2020, the United States District Court for the Northern District of Illinois, Eastern Division (the **"Illinois District Court"**), entered two separate stipulated preliminary injunction orders titled Order Imposing Preliminary Injunction Freezing Assets and Granting Other Relief [ECF Nos. 55, 56] (collectively, the **"PI Orders"**) against each of the Receivership Defendants, TGC and Courtright, which shall remain in effect until the Court's determination of the merits of the allegations set forth in the SEC's Complaint or further order of the Court.

## THE PARTIES

### The Receiver

7.      Plaintiff, Melanie E. Damian, was appointed by the Illinois District Court as Receiver. Plaintiff brings this action in her capacity as Receiver, pursuant to the authority granted by the Illinois District Court in the TRO, Appointment Order and the Stipulation and each of the PI Orders entered in the SEC Action.

3

**The Defendants**

8.      Defendant Conklin Web Properties, LLC d/b/a Conklin Media (**"Conklin Web Properties"**) is a Pennsylvania limited liability company formed in 2010 and solely owned by Defendant Dave Conklin. According to its website (www.conklinmedia.com, last visited Sep. 18, 2020), Conklin Web Properties offers its clients custom marketing strategy development, consulting and training. At all times material hereto, Conklin Web Properties received substantial amounts of funds from TGC purportedly in exchange for marketing services that did not provide value to TGC.

9.      Defendant Conklin Media, LLC (**"Conklin Media"**) is a Pennsylvania limited liability company formed in 2019, but Dave Conklin has provided digital marketing services under the name Conklin Media since October 2007. Upon information and belief, Conklin Media is solely owned by Defendant Dave Conklin and was incorporated to separate the Conklin Web Properties' marketing agency clients from Conklin Web Properties' other ventures. At all times material hereto, Conklin Media received substantial amounts of funds from TGC purportedly in exchange for marketing services that did not provide value to TGC.

10.      Defendant Dave Conklin (**"D. Conklin"**) is the Founder and CEO of Conklin Web Properties and Conklin Media, is over 18 years of age, and is otherwise *sui juris*. D. Conklin is a resident of the State of Pennsylvania. Upon information and belief, D. Conklin is the sole owner of Conklin Web Properties and Conklin Media, and later served as the Chief Marketing Officer of TGC. At all times material hereto, D. Conklin was an insider of TGC, and received substantial amounts of funds from TGC purportedly in exchange for marketing services provided through co-defendants, Conklin Web Properties and Conklin Media, which did not provide value to TGC. *See* 740 ILCS 160/2 (g).

4

11.     Defendant Conklin & Courtright LLC (**"Conklin & Courtright"**) is a Pennsylvania limited liability company. Upon information and belief, Conklin & Courtright was formed by D. Conklin and Courtright in 2017 and operated as a marketing agency. At all times material hereto, Conklin & Courtright received substantial amounts of funds from TGC purportedly in exchange for marketing services that did not provide value to TGC.

12.     Defendant Prospect MX, LLC (**"Prospect MX"**) is a Pennsylvania limited lability company.  Upon information and belief, Prospect MX operates as an internet marketing company, and D. Conklin is one of its founders. At all times material hereto, Prospect MX received substantial amounts of funds from TGC purportedly in exchange for internet marketing services that did not provide value to TGC.

13.     Defendant Jodi Conklin (**"J. Conklin"**) is the wife of Defendant D. Conklin, is over 18 years of age, and is otherwise *sui juris*. J. Conklin is a resident of the State of Pennsylvania. At all times material hereto, J. Conklin was an insider of TGC, and received substantial amounts of funds from TGC without providing value to TGC in exchange for those funds. *See* 740 ILCS 160/2 (g).

14.     Defendant Emily Lasko (formerly Emily Conklin, and hereinafter referred to as **"Lasko"**), is the daughter of Defendant D. Conklin and is also the digital marketing strategist for Defendant Conklin Media.  Lasko is over 18 years of age and is otherwise *sui juris*. Lasko is a resident of the State of Pennsylvania. At all times material hereto, Lasko was an insider of TGC, and received substantial amounts of funds from TGC without providing value to TGC in exchange for those funds. *See* 740 ILCS 160/2 (g).

15.     Defendant Haley Hirthler (formerly Haley Conklin, and hereinafter referred to as **"Hirthler"**), is the daughter of Defendant D. Conklin, is over 18 years of age, and is otherwise

5

*sui juris.* Hirthler is a resident of the State of Pennsylvania. At all times material hereto, Hirthler was an insider of TGC, and received substantial amounts of funds from TGC without providing value to TGC in exchange for those funds. *See* 740 ILCS 160/2 (g).

16.    The payments that each Defendant received from TGC, which the Receiver is seeking to recover in this action, were obtained from the investors (a/k/a **"website partners"**) and creditors TGC had defrauded in connection with the fraudulent scheme that Courtright perpetrated through TGC.

## JURISDICTION AND VENUE

17.    This Complaint is brought to accomplish the ends sought and directed by the Illinois District Court in the SEC Action, which, among other things, appointed Plaintiff as Receiver and authorized her to commence actions to recover assets of the Receivership Estate. This action is related to the claims in the SEC Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to Title 28, United States Code, Section 1367(a). Therefore, this Court has subject matter jurisdiction over this action.

18.    This Court has personal jurisdiction over Defendants because Defendants are either residents of Pennsylvania, or are business entities formed in Pennsylvania. Defendants received transfers from and/or conducted business with TGC, which in turn was conducting, engaging in, and carrying on a fraudulent business or venture in, among other locations, the Eastern District of Pennsylvania. Further, the transfers that Defendants received from TGC's

{02040296;v3 }

bank accounts in Illinois were proceeds from TGC's fraudulent scheme conducted, in part, in the Eastern District of Pennsylvania.

19.     Venue is proper in the Eastern District of Pennsylvania, pursuant to Title 28, United States Code, Sections 754, 1391(b), and 1692, because this action is brought to accomplish the objectives of the TRO, the Appointment Order, and the PI Orders and is thus ancillary to the Court's exclusive jurisdiction over the Receivership Estate. Further, several of the acts described in this Complaint occurred in the Eastern District of Pennsylvania.

**THE RECEIVER'S STANDING**
**TO BRING THE CLAIMS ASSERTED HEREIN**

20.     The Receiver has standing to bring the claims asserted in this Complaint pursuant to the Court's TRO, Appointment Order, and PI Orders. The Receiver's mandate was to, *inter alia*, take possession, custody, and control of TGC's assets, establish control of TGC's businesses (to the extent they exist and continue to operate), prevent the withdrawal or misapplication of TGC's funds, collect funds due to TGC, obtain documents and records pertaining to TGC's assets, transactions, and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. *See* ECF No. 19 at pp. 2-4.

21.     Pursuant to the Appointment Order, the Receiver was directed to "assume and control the operation of Receivership Defendant and shall pursue and preserve all claims or interests of the Receivership Defendant. The Receiver may continue and conduct the business of the Receivership Defendant in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all." *See* ECF No. 19, at p. 3.  Included among such claims are fraudulent transfer actions to recover for the benefit of the Estate amounts that TGC fraudulently transferred to insiders, affiliates and third parties.

{02040296;v3 }

22.      The Receiver, on behalf of receivership entity TGC, as a "creditor" of TGC as defined in 740 ILCS § 160/1, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS § 160 and common law unjust enrichment (pled in the alternative to the fraudulent transfer claims) and aiding and abetting claims.

## FACTUAL ALLEGATIONS

### The TGC Fraudulent Scheme

23.      From at least 2017 through October 2019, TGC and Courtright raised at least $75 million from more than 500 investors who entered into "Consulting Performance Agreements" with TGC (the **"Agreements"**) pursuant to which the investors would provide up-front payments and ongoing payments in the form of advertising and eCommerce revenues to TGC, and TGC promised to pay investors a minimum guaranteed rate of return, in perpetuity, on revenues generated by websites that TGC acquires or builds for the investors and then develops, maintains, and hosts.

24.      In Particular, under the Agreements, each investor was guaranteed a percentage of the revenues of the websites that would be assigned to them or a minimum annual guaranteed return (ranging from 13% to 20%), to be paid monthly, even if the website did not generate sufficient revenue to pay the promised monthly payment.

25.      The Agreements tout TGC's experience and expertise, informing investors that TGC's "growth formulas" with a foundation in page one Google placement as well as a tailored eCommerce strategy would build a bridge to an array of revenue streams for the investor sites.

26.      Further, under paragraph O of the Agreements, the investor's up-front fee was to be used "exclusively for the purchase, hosting, maintenance and marketing of the revenue generating website..."

8

27.     And, TGC represented to the investors that it is in "satisfactory financial condition, solvent, able to pay its bills when due and financially able to perform its contractual duties" and that it is "debt-free . . . with no accounts payable or loans outstanding."

28.     The foregoing representations to investors were false and not supported by TGC's own records. Indeed, the revenue that was generated from all of the websites each month was significantly less than the monthly payment obligations to the investors and certainly was not sufficient to cover both those monthly payments and TGC's monthly overhead expenses. In addition, despite contrary representations to the investors, the websites and domains with minor exceptions were maintained in the name of, and owned by, TGC and not the individual investors. And, TGC, for at least the past three years, was not solvent or financially able to pay its bills when due (without the improper use of new investor funds) to meet its contractual obligations.

29.     In particular, since at least January 2017, the websites generated approximately $9 million in advertising and product sales revenue, but TGC paid at least $30 million to investors, purportedly pursuant to the Agreements.

30.     In 2019 alone, according to the Profit and Losses accounting from the company's records, website income was $3,724,809.00, but TGC paid $16.5 million to investors.  And, TGC generated "revenue" in the form of investments from investors (its largest source of revenue) of approximately $41.5 million and had operating expenses in the amount of $34,653,706, resulting in a net loss of $7,520,873.

31.     And, prior years reflect a similar discrepancy in revenues generated from investors in comparison with the amounts paid to investors based upon their investments.

{02040296;v3 }

32.     TGC also obtained loans from distressed lending companies and deposited the loan proceeds into the same TGC bank accounts into which TGC deposited the up-front payments it received from investors and the revenues from the websites.

33.     Because many of the websites were not generating sufficient revenues for TGC to pay the amounts due to the investors under the Agreements, TGC covered the significant shortfall primarily by using up-front fees it obtained from new and repeat investors who had entered into Agreements with TGC, and also by using the commingled proceeds of significant loans it received from lenders, to pay the minimum monthly payments it guaranteed to earlier investors under the Agreements, and to make payments towards the loans.

34.     Because TGC's business depended on the use of new investors' up-front payments (and perhaps loan proceeds) to cover its obligations to earlier investors, TGC was a classic Ponzi scheme.

35.     Based on the Receiver's analysis of TGC's operations and books and records, this business model as implemented by Defendant Courtright was not sustainable, feasible or profitable.

36.     In fact, TGC's business model resulted in significant losses to most of the investors. Some investors received the return of their full investments plus additional amounts making them net winners, because they were early investors who received payments over a longer period of time before the commencement of the SEC Action, or Defendant Courtright chose to pay them more than the amounts due to them under the Agreements. But the majority of investors received back significantly less than they had invested or nothing at all because they invested closer in time to the commencement of the SEC Action, or Defendant Courtright chose

{02040296;v3 }

not to pay them the amounts due to them under the Agreements making them net losers with a potential claim against the Receivership Estate.

**Preliminary Findings of Fraud Against TGC**

37.     As a result of this fraudulent behavior, the SEC commenced the SEC Action against TGC that resulted in entry of the TRO and PI Orders containing preliminary findings that TGC likely participated in a fraudulent securities scheme.

38.     At all times material hereto, Courtright, as principal and President, controlled and operated TGC as a means to carry out the fraudulent scheme, thereby causing TGC to commit violations of securities laws and rules, in breach of his fiduciary duties to TGC. TGC was under the control of Courtright until the appointment of the Receiver and thus unable to seek recovery of the fraudulent transfers prior to that point.

39.     TGC made the transfers at Courtright's direction, as a result of his fraudulent domination, adverse interest in, and control of TGC and as part of his continued breaches of his fiduciary duties to TGC.

**The Insolvency of TGC**

40.     As a result of operating a Ponzi scheme, TGC was insolvent, undercapitalized, and operating at a loss.  During all relevant times, TGC did not have sufficient assets to pay its debts to investors and/or creditors as those debts became due.

41.     Because most investors have not received the return of their investment or all of the amounts due to them under the Agreements, these investors will have significant claims against the Receivership Estate to recover their investments.

**Transfers to Defendants**

42.    From April 6, 2010 to August 1, 2017, TGC made approximately 249 transfers of funds in the total amount of at least $1,140,416.52, to Defendant Conklin Web Properties. Many of the transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to Conklin Web Properties, attached hereto as **Exhibit "A"**. Upon information and belief, Conklin Web Properties transferred the funds it received from TGC to D. Conklin as its sole owner, making D. Conklin the subsequent transferee of these funds.

43.    From January 23, 2018 through September 17, 2019, TGC made approximately 27 transfers of funds in the total amount of at least $162,776.00, to Defendant Conklin Media. Many of the Transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to Conklin Web Properties, attached hereto as **Exhibit "B"**. Upon information and belief, Conklin Media transferred the funds it received from TGC to D. Conklin as its sole owner, making D. Conklin the subsequent transferee of these funds.

44.    From June 1, 2011 to November 29, 2011, TGC made approximately 27 transfers of funds in the total amount $67,500.00 to Defendant D. Conklin. All of the transfers originated from TGC's bank accounts located in Illinois.  *See* Summary of Disbursements to D. Conklin, attached hereto as **Exhibit "C"**.

45.    From March 2, 2017 through June 1. 2017, TGC made approximately 5 transfers of funds in the total amount of $10,000.00 to Defendant Conklin & Courtright. At least two of those transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to Conklin & Courtright LLC, attached hereto as **Exhibit "D"**.

46.    From January 10, 2010 through September 25, 2010, TGC made approximately 9 transfers of funds in the total amount of $79,350.00 to Defendant Prospect MX. Most, if not all

of the transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to Prospect MX, attached hereto as **Exhibit "E."**

47.     From February 23, 2017 to July 27, 2017, TGC made approximately 13 transfers of funds in the total amount of $7,322.74 to Defendant J. Conklin. All of the transfers originated from TGC's bank accounts located in Illinois.  *See* Summary of Disbursements to J. Conklin, attached hereto as **Exhibit "F"**.

48.     From January 29, 2015 through August 14, 2017, TGC made approximately 42 transfers of funds in the total amount of $42,724.11 to Defendant Lasko. All of the transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to Emily L. Conklin (n/k/a Emily Lasko), attached hereto as **Exhibit "G"**.

49.     From August 24, 2016 through December 14, 2017, TGC made approximately 28 transfers of funds in the total amount of $12,319.59 to Defendant Hirthler. All of the transfers originated from TGC's bank accounts located in Illinois. *See* Summary of Disbursements to Haley L. Conklin (n/k/a Haley Hirthler), attached hereto as **Exhibit "H"**.

50.     Collectively, the transfers to the Defendants detailed *supra* and in Exhibits A through G and totaling approximately $1,522,408.96 are hereinafter referred to as the **"Transfers."**

51.     The funds comprising the Transfers to Defendants were funds that TGC and/or Courtright fraudulently obtained from investors and/or creditors in the form of investments, fees and/or other payments made in connection with the Agreements.

52.     On or about February 13, 2020, Defendant D. Conklin received a subpoena from the U.S. Securities and Exchange Commission (the **"Subpoena"**). In response to the Subpoena, on February 17, 2020, D. Conklin provided correspondence to the SEC detailing the relationship

between TGC and Defendants D. Conklin, Conklin Web Properties, Conklin Media and Conklin & Courtright (the **"Correspondence to the SEC"**). *See* Correspondence to the SEC dated February 17, 2020, attached as **Exhibit "I"**. According to D. Conklin, the services provided by Defendants D. Conklin, Conklin Web Properties and Conklin Media can be divided into three categories:

    a.  Monthly Consulting Payments:

        i.  In 2014, Courtright paid Defendant Conklin Web Properties approximately $4,000 per week purportedly for consulting on specific websites.

        ii.  In or about July of 2014, Courtright requested additional services from D. Conklin, wherein D. Conklin, through Conklin Web Properties, was purportedly tasked with building a marketing team and launching an office in Quarryville, PA to market more websites for TGC. Specifically, D. Conklin's duties purportedly included hiring, training and growing a digital marketing team and offering strategic digital marketing advice for specific sites. Allegedly, as a result of this additional work, D. Conklin's weekly consulting fee was adjusted to $5,200, which lasted through approximately August of 2017.

    b.  Project-Based Payments:

        i.  After August 2017, all transfers to Defendants D. Conklin, Conklin Web Properties and Conklin Media were purportedly related to specific marketing-related projects billed via invoices.

    c.  Reimbursements:

        i.  Between approximately 2014 and 2017, while Defendant D. Conklin purportedly was hiring and training the marketing team and assisting in the office build-out in Quarryville, PA, D. Conklin would purportedly pay for certain expenses "out of pocket" and then seek reimbursement from Courtright and/or TGC.

53.    Also according to D. Conklin's Correspondence to the SEC, D. Conklin and Courtright purportedly formed Conklin & Courtright for the purpose of "launching an agency

together", but they decided "not to move forward after selling a few small clients." The Correspondence to the SEC was silent regarding the transfers to J. Conklin, Lasko and Hirthler.

54.    Defendants received the Transfers without providing reasonably equivalent value to TGC in exchange for those Transfers.

55.    Further, any services that Defendants may have provided to TGC only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, not only did Defendants not provide any reasonably equivalent value or any other benefit to TGC, but also Defendants increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

56.    Moreover, at all material times, Defendants D. Conklin, J. Conklin, Lasko and Hirthler received the Transfers from TGC as insiders of TGC who knew or should have known that TGC was being operated as a Ponzi scheme and/or that TGC was making fraudulent misrepresentations to its investors regarding the use of their funds and, thus, Defendants did not receive the Transfers in good faith.

57.    When TGC made the Transfers to Defendants, TGC intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

58.    Thus, TGC had the actual intent to delay, hinder, or defraud investors and creditors, and made the Transfers to delay, hinder, or defraud investors and creditors.

59.    TGC, and thereby the Receivership Estate, have been damaged significantly as a direct and proximate result of the Transfers as alleged above.  Such damages include, but are not

{02040296;v3 }

limited to, losses due to the dissipation of investor funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

60.     Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from TGC as a result of the fraudulent transfers to, and unjust enrichment of, Defendants.

61.     All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

62.     The Receiver was not appointed to take control of TGC until December 30, 2019, therefore, she could not have discovered the Transfers until that date at the earliest, and she did not even begin to discover some of the Transfers until May 2020. Accordingly, this action is brought within the pertinent statutory limitations period. *See* 740 ILCS 160/10.

63.     Because TGC was operated from its headquarters in Minooka, Illinois, and the Transfers came from TGC's bank accounts located in Illinois, Illinois law applies to the fraudulent transfer claims brought herein.


## CLAIMS FOR RELIEF

### COUNT I
### (All Defendants)

**Violations of Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act
740 ILCS § 160/5(a)(1)**

64.     Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     This is a claim to avoid and recover a fraudulent transfer pursuant to Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act.

{02040296;v3 }

66.     Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act provides:

Sec. 5.(a). A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor;

740 ILCS 160/5(a)(1).

67.     The Receiver acting on behalf, and standing in the shoes, of receivership entity TGC has standing within the meaning of the Illinois Uniform Fraudulent Transfer Act to seek the return of fraudulent transfers that Courtright transferred from TGC to investors and/or creditors pursuant to the actual fraud prong of the statute. 740 ILCS 160/5(a)(1).

68.     TGC's Transfers to Defendants were part of a Ponzi scheme, and thus as a matter of law, were made and/or directed by Courtright with actual intent to hinder, delay, or defraud the creditors of TGC.

69.     In particular, as detailed above, Courtright fraudulently, acting through his fraudulent domination, adverse interest in, and control of TGC, caused the transfer of at least $1,522,408.96 in fraudulent transfers to the Defendants with an actual intent to hinder, delay, or defraud TGC's creditors.

70.     At all material times, Defendants D. Conklin, J. Conklin, Lasko and Hirthler were insiders of TGC and received the Transfers as compensation and/or commissions for the services that they provided to TGC to perpetuate its fraudulent scheme.  D. Conklin, as the sole owner of Conklin Web Properties and Conklin Media, was the subsequent transferee of the funds TGC transferred to those entities.

{02040296;v3 }

71.     Defendants received the Transfers without providing to TGC reasonably equivalent value in exchange for the Transfers.

72.     Any services that Defendants may have provided to TGC only facilitated and perpetuated the fraud against current investors and recruiting new investors.  Thus, Defendants did not provide any reasonably equivalent value or any other benefit to TGC but rather increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

73.     At the time that TGC made the Transfers, Courtright was operating it as a fraudulent scheme and as a Ponzi scheme to the detriment of TGC and its investors and/or creditors, as determined by the Court in the TRO and PI Orders.

74.     TGC made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

75.     At the time that TGC made the Transfers, Courtright removed and/or concealed assets of TGC from the reach of its investors and/or creditors.

76.     TGC made the Transfers at Courtright's direction, as a result of his fraudulent domination, adverse interest in, and control of TGC and as part of his continued breaches of his fiduciary duties to TGC.

77.     Thus, TGC had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud TGC's creditors.  Consequently, the Transfers were inherently fraudulent pursuant to Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act.

78.     Because the Transfers were fraudulent under Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act, the Receiver may avoid the Transfers, pursuant to Section 8(a) of the Illinois Uniform Fraudulent Transfer Act.

{02040296;v3 }

79.     As a direct and proximate result of TGC's fraudulent Transfers to Defendants, the Receivership Estate has been damaged or otherwise diminished in the amount of at least $1,522,408.96, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and/or creditors who were defrauded by TGC and its principal Courtright.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendants: (1) determining that the Transfers from TGC to Defendants were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants, in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) finding Defendant Dave Conklin jointly and severally liable for the return of the transfers TGC made to Defendants Conklin Web Properties, Conklin Media and Conklin & Courtright; (4) awarding Plaintiff damages, costs, and interest; and (5) granting such other and further relief as may be just and proper.

## COUNT II
## (All Defendants)

### Violations of Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act
### 740 ILCS § 160/5(a)(2)

80.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.     Section 5(a)(2) of the Illinois Uniform Fraudulent Transfer Act provides:

> Sec. 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a)(2).

82.     The Receiver acting on behalf, and standing in the shoes, of TGC has standing within the meaning of the Illinois Uniform Fraudulent Transfer Act to seek the return of fraudulent transfers that TGC made to Defendants pursuant to the constructive fraud prong of the Act. 740 ILCS 160/5(a)(2).

83.     The Transfers to Defendants were made without TGC receiving reasonably equivalent value in exchange for the Transfers or obligations incurred.

84.     Any services that Defendants may have provided to TGC only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to TGC but rather increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

85.     Also, the Transfers occurred when TGC's remaining assets were unreasonably small in relation to the business transaction(s) and when TGC intended to incur or believed, or reasonably should have believed, that TGC would incur debts beyond its abilities to pay as they became due.

20

{02040296;v3 }

86.     As a direct and proximate result of TGC's fraudulent Transfers to Defendant, the Receivership Estate has been damaged or otherwise diminished in the amount of at least $1,522,408.96, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and/or creditors who were defrauded by TGC and its principal Courtright.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendants: (1) determining that the Transfers from TGC to Defendants were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants, in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) finding Defendant Dave Conklin jointly and severally liable for the return of the transfers TGC made to Defendants Conklin Web Properties, Conklin Media and Conklin & Courtright; (4) awarding Plaintiff damages, costs, and interest; and (5) granting such other and further relief as may be just and proper.

## COUNT III
### (All Defendants)

### Unjust Enrichment

87.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.     TGC conferred a benefit on Defendants when it made the Transfers to them in the amount of at least $1,522,408.96, all of which were derived from the fraudulent scheme orchestrated by Courtright through TGC.

{02040296;v3 }

89.     Defendants had knowledge of the benefit Defendants received from TGC as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

90.     It is inherently unfair and inequitable violating fundamental principles of justice, equity and good conscience that the funds of investors defrauded in TGC's fraudulent scheme are retained by and used to personally benefit Defendants (who knew or should have known of TGC's fraudulent scheme as insiders of TGC), rather than being returned to the Receivership Estate for the benefit of all of the defrauded investors and creditors.

91.     As a direct and proximate result of Defendants' retention of at least the $1,522,408.96 that TGC fraudulently transferred to Defendants, the Receivership Estate has been damaged or diminished, and, under the circumstances, equity dictates that Defendants should return the funds received from TGC and turn over any assets they may have acquired with those funds to the Receiver for the benefit of all of the defrauded investors and creditors.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendants: (1) determining that the Transfers from TGC to Defendants were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants, in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) finding Defendant Dave Conklin jointly and severally liable for the return of the transfers TGC made to Defendants Conklin Web Properties, Conklin Media and Conklin & Courtright; (4) awarding Plaintiff damages, costs, and interest; and (5) granting such other and further relief as may be just and proper.

{02040296;v3 }

## COUNT IV
### (Defendant D. Conklin)

### Aiding and Abetting Fraud

92.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     As set forth above, Courtright was operating TGC as a fraudulent scheme and as a Ponzi scheme to the detriment of TGC and its investors and/or creditors, as determined by the Court in the TRO and PI Orders.

94.     In D. Conklin's role as the sole owner of Conklin Web Properties and Conklin Media, in his role as part-owner of Prospect MX, and later, in D. Conklin's role as Chief Marketing Officer for TGC, D. Conklin and/or his companies oversaw all marketing for TGC and provided consulting and training services for TGC and its employees.  Through these roles, Defendant D. Conklin knowingly and substantially assisted Courtright in perpetuating the fraudulent scheme and Ponzi scheme over the course of several years by marketing TGC to investors, and even launching an office in Quarryville, PA to market specific websites for TGC, all while knowing that the websites generated substantially less than what was being paid to TGC's existing investors.

95.     At the time Defendant D. Conklin provided assistance to Courtright, D. Conklin was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme.

96.     As a direct and proximate result of D. Conklin's conduct, TGC sustained damages.

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant for compensatory damages and/or restitution, interest, costs, and for such further relief as may be just and proper.

{02040296;v3 }

## COUNT V
## (Defendant D. Conklin)

### Aiding and Abetting Breach of Fiduciary Duty

97.     Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98.     As set forth above, Courtright was operating TGC as a fraudulent scheme and as a Ponzi scheme to the detriment of TGC and its investors and/or creditors, as determined by the Court in the TRO and PI Orders.

99.     By defrauding TGC's investors and operating a Ponzi scheme, Courtright breached his fiduciary duty to TGC's investors to safeguard their investments and not use their investment funds for his own personal benefit.

100.    In D. Conklin's role as the sole owner of Conklin Web Properties and Conklin Media, in his role as part-owner of Prospect MX, and later, in D. Conklin's role as Chief Marketing Officer for TGC, D. Conklin and/or his companies oversaw all marketing for TGC and provided consulting and training services for TGC and its employees.  Through these roles, Defendant D. Conklin knowingly and substantially assisted Courtright in perpetuating the fraudulent scheme and Ponzi scheme over the course of several years by marketing TGC to investors, and even launching an office in Quarryville, PA to market specific websites for TGC, all while knowing that the websites generated substantially less than what was being paid to TGC's existing investors.

101.    At the time Defendant D. Conklin provided assistance to Courtright, D. Conklin was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme.

102.    As a direct and proximate result of D. Conklin's conduct, TGC sustained damages.

{02040296;v3 }

WHEREFORE, Plaintiff, as the Receiver for TGC, respectfully requests that the Court enter judgment against Defendant for compensatory damages and/or restitution, interest, costs, and for such further relief as may be just and proper.

Respectfully submitted,

SEMANOFF ORMSBY
  GREENBERG & TORCHIA, LLC

By:    */s/ Stephen C. Goldblum*
STEPHEN C. GOLDBLUM, ESQ.
PA Bar No. 83927
2617 Huntingdon Pike
Huntingdon Valley, PA  19006
(215) 887-0200
sgoldblum@sogtlaw.com

and

*/s/ Kenneth Dante Murena*

Kenneth Dante Murena, Esq.
Florida Bar No. 147486
kmurena@dvllp.com
Christine M. Dimitriou, Esq.
Florida Bar No. 99381
cdimitriou@dvllp.com
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone:  (305) 371-3960
Facsimile:  (305) 371-3965
*Pro Hac Vice Applications Pending*

*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*

25

# EXHIBIT "A"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Transfers to Conklin Web Properties, LLC**

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| Bank of Shorewood | 04/06/10 | | 912 | Conklin Web Properties, LLC | $    - | $    750.00 |
| Bank of Shorewood | 04/13/10 | | 913 | Conklin Web Properties, LLC | - | 750.00 |
| Bank of Shorewood | 04/20/10 | | 914 | Conklin Web Properties, LLC | - | 750.00 |
| Bank of Shorewood | 04/20/10 | | 916 | Conklin Web Properties, LLC | - | 1,500.00 |
| Bank of Shorewood | 04/27/10 | | 915 | Conklin Web Properties, LLC | - | 750.00 |
| Bank of Shorewood | 04/27/10 | | 954 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 04/27/10 | | 955 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 06/01/10 | | 956 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 06/07/10 | | 957 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 06/14/10 | | 959 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 06/21/10 | | 959 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 06/27/10 | | 960 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 07/12/10 | | 961 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 07/19/10 | | 962 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 07/26/10 | | 963 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 08/01/10 | | 964 | Conklin Web Properties, LLC | - | 1,250.00 |
| Bank of Shorewood | 08/06/10 | | 965 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 08/17/10 | | 966 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 08/24/10 | | 968 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 08/30/10 | | 969 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 09/07/10 | | 970 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 09/13/10 | | 971 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 09/21/10 | | 972 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 10/01/10 | | 974 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 10/01/10 | | 975 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 10/11/10 | | 1062 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 10/11/10 | | 1059 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 10/25/10 | | 973 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 11/15/10 | | 976 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 11/27/10 | | 977 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 11/27/10 | | 978 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 12/05/10 | | 980 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 12/05/10 | | 979 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 12/10/10 | | 1131 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 12/10/10 | | 1133 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 01/03/11 | | 1148 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 01/03/11 | | 1132 | Conklin Web Properties, LLC | - | 5,000.00 |
| Bank of Shorewood | 01/10/11 | | 1149 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 01/17/11 | | 1150 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 01/24/11 | | 1151 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 02/06/11 | | 1162 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 02/10/11 | | 1176 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 02/21/11 | | 1177 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 02/28/11 | | 1178 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 03/07/11 | | 1180 | Conklin Web Properties, LLC | - | 2,500.00 |
| Bank of Shorewood | 03/21/11 | | 1269 | Conklin Web Properties, LLC | - | 2,500.00 |
| HB 5912 | 01/04/12 | | Auto | Conklin Web Properties, LLC | - | 2,500.00 |
| HB 5912 | 01/11/12 | | Auto | Conklin Web Properties, LLC | - | 1,000.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to Conklin Web Properties, LLC

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| HB 5912 | 01/18/12 | | Auto | Conklin Web Properties, LLC | - | 1,000.00 |
| HB 5912 | 01/25/12 | | | Conklin Web Properties, LLC | - | 1,000.00 |
| HB 5912 | 02/01/12 | | | Conklin Web Properties, LLC | - | 1,000.00 |
| HB 5912 | 02/08/12 | | Auto | Conklin Web Properties, LLC | - | 1,000.00 |
| HB 5912 | 02/09/12 | | ach | Conklin Web Properties, LLC | - | 1,150.00 |
| HB 5912 | 09/20/13 | | ach | Conklin Web Properties, LLC | - | 3,000.00 |
| HB 5912 | 09/27/13 | | ach | Conklin Web Properties, LLC | - | 2,500.00 |
| HB 5912 | 01/22/14 | | ach | Conklin Web Properties, LLC | - | 1,200.00 |
| HB 5912 | 02/06/14 | | ACH | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 02/13/14 | | ACH | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 02/20/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 02/28/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 03/05/14 | | 1511 | Conklin Web Properties, LLC | - | 564.63 |
| HB 5912 | 03/06/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 03/13/14 | | ACH | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 03/20/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 03/27/14 | | ACH | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 04/03/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 04/10/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 04/17/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 04/25/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 05/01/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 05/08/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 05/15/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 05/22/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 05/29/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 06/05/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 06/12/14 | | ac | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 06/19/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 06/25/14 | | ach | Conklin Web Properties, LLC | - | 2,500.00 |
| HB 5912 | 06/26/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 07/03/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 07/10/14 | | ac | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 07/10/14 | | ach | Conklin Web Properties, LLC | - | 1,200.00 |
| HB 5912 | 07/17/14 | | ach | Conklin Web Properties, LLC | - | 4,000.00 |
| HB 5912 | 07/17/14 | | ach | Conklin Web Properties, LLC | - | 1,200.00 |
| HB 5912 | 07/24/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/31/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/07/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/14/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/22/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/28/14 | | adch | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/04/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/11/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/18/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/25/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/02/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/09/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**

**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**

**CASE NO: 1:19-CV-08454**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

**Transfers to Conklin Web Properties, LLC**

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| HB 5912 | 10/16/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/23/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/30/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/06/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/13/14 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/20/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/26/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/04/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/10/14 | | AC | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/24/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/31/14 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/08/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/15/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/22/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/29/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/05/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/12/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/19/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/26/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/04/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/05/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/12/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/19/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/26/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/01/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/08/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/16/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/23/15 | | qch | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/30/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/06/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/15/15 | | qhc | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/21/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/28/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/04/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/11/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/18/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/23/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/02/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/09/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/16/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/23/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/30/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/06/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/13/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/21/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/27/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/03/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/10/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Transfers to Conklin Web Properties, LLC**

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| HB 5912 | 09/17/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/24/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/24/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/01/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/08/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/15/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/20/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/29/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/05/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/12/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/19/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/25/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/03/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/10/15 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/17/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/23/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/31/15 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/07/16 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/14/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/21/16 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/29/16 | | ACH | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/04/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/11/16 | 02/11/16 | wire | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/18/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 02/25/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/03/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/10/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/17/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/18/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 03/31/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/07/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/14/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/21/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 04/28/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/05/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/12/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/19/16 | | ach | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 05/26/16 | | ah | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/02/16 | | ACH060220167 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/06/16 | 06/06/16 | | Conklin Web Properties, LLC | - | 42,788.90 |
| HB 5912 | 06/09/16 | | ACH060220170 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/16/16 | | Payroll06162 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/21/16 | 06/21/16 | | Conklin Web Properties, LLC | - | 8,597.27 |
| HB 5912 | 06/23/16 | | ACH062320164 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 06/30/16 | | ACH062320169 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/07/16 | | ACH070720163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/14/16 | | ACH071420163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 07/21/16 | | ACH072120162 | Conklin Web Properties, LLC | - | 5,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT
D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III
CASE NO: 1:19-CV-08454
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**Transfers to Conklin Web Properties, LLC**

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| HB 5912 | 07/28/16 | | ACH072820163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/04/16 | | ACH080420163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/11/16 | | ACH081120163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/18/16 | | ACH08182018 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 08/25/16 | | ACH082520165 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/02/16 | | ACH090220163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/09/16 | | ACH090920163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/15/16 | | ACh09152018 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/22/16 | | ACh092220163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 09/29/16 | | ACH092920163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/06/16 | | ACH100620163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/13/16 | | ACH101320163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/20/16 | | ACH102020163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 10/27/16 | | ACH102720163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/03/16 | | ACH110320163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/10/16 | | ACH111020163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/17/16 | | ACH111720163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 11/23/16 | | ACh112320163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/02/16 | | ACH120220163 | Conklin Web Properties, LLC | - | 5,200.00 |
| PayPal | 12/08/16 | | 73G67677JX105 | Conklin Web Properties, LLC | - | 600.00 |
| HB 5912 | 12/09/16 | | ACH120920163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/16/16 | | ACH121620163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/22/16 | | 1222160095 | Conklin Web Properties, LLC | - | 10,221.61 |
| PayPal | 12/22/16 | | 76588942432008 | Conklin Web Properties, LLC | - | 600.00 |
| HB 5912 | 12/23/16 | | ACH122320165 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 12/30/16 | | ACH123020163 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/06/17 | | ACH010620173 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/12/17 | | ACH011220171 | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | 01/20/17 | | ACH1202021a | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 02/10/17 | | | Conklin Web Properties, LLC | - | 1,011.59 |
| HB 5912 | 02/13/17 | | 2092019 | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 02/14/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 02/21/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 02/27/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 03/03/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 03/10/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 03/20/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 03/28/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 04/03/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 04/11/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 04/17/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 04/26/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 05/02/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 05/08/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 05/16/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 05/22/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 05/26/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 06/06/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

### Transfers to Conklin Web Properties, LLC

**Source:** PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| Bill.com | 06/13/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 06/19/17 | | | Conklin Web Properties, LLC | - | 2,632.52 |
| Bill.com | 06/20/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 06/26/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 07/03/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 07/11/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 07/17/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| Bill.com | 07/24/17 | | | Conklin Web Properties, LLC | - | 5,200.00 |
| HB 5912 | | 08/28/17 | | Conklin Web Properties, LLC | 5,200.00 | - |
| | | | | | $   5,200.00 | $1,140,416.52 |

# EXHIBIT "B"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT
D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III
CASE NO: 1:19-CV-08454
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

## Transfers to Conklin Media

**Source:** PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee | Payment Amount |
|---|---|---|---|---|---|
| Bill.com | 01/23/18 | | | Conklin Media | $    5,000.00 |
| HB 5912 | 01/29/18 | | ACH 1 / 12 | Conklin Media | 5,000.00 |
| Bill.com | 03/09/18 | | | Conklin Media | 10,000.00 |
| Bill.com | 03/09/18 | | | Conklin Media | 1.00 |
| Bill.com | 04/09/18 | | | Conklin Media | 5,000.00 |
| Bill.com | 04/18/18 | | | Conklin Media | 7,500.00 |
| Bill.com | 07/03/18 | | | Conklin Media | 3,000.00 |
| Bill.com | 08/29/18 | | | Conklin Media | 5,000.00 |
| Bill.com | 10/03/18 | | | Conklin Media | 14,750.00 |
| Bill.com | 11/19/18 | | | Conklin Media | 8,750.00 |
| Bill.com | 12/11/18 | | | Conklin Media | 5,000.00 |
| Bill.com | 12/28/18 | | | Conklin Media | 12,250.00 |
| PNC 9798 | 01/07/19 | 01/07/19 | | Conklin Media | 10,000.00 |
| Bill.com | 01/17/19 | | | Conklin Media | 2,250.00 |
| PNC 9798 | 01/31/19 | | ach | Conklin Media | 8,050.00 |
| PNC 9798 | 03/11/19 | | ach0310197 | Conklin Media | 100.00 |
| PNC 9798 | 03/25/19 | | ach0325197 | Conklin Media | 25.00 |
| PNC 9798 | 04/01/19 | | ach032719-10 | Conklin Media | 5,500.00 |
| PNC 9798 | 04/08/19 | | ACH0040819-5 | Conklin Media | 50.00 |
| PNC 9798 | 04/22/19 | | ACH0042219-6 | Conklin Media | 2,200.00 |
| PNC 9798 | 05/15/19 | | ach051519-12 | Conklin Media | 16,300.00 |
| PNC 9798 | 06/03/19 | | ach060319-17 | Conklin Media | 6,275.00 |
| PNC 9798 | 07/23/19 | | ach072319-14 | Conklin Media | 6,325.00 |
| PNC 9798 | 07/23/19 | | ach072319-2 | Conklin Media | 6,325.00 |
| PNC 9798 | 08/22/19 | | ach082219-1 | Conklin Media | 6,550.00 |
| PNC 9798 | 08/28/19 | | ach082819-4 | Conklin Media | 3,775.00 |
| PNC 9798 | 09/17/19 | | ach091719-2 | Conklin Media | 7,800.00 |
| | | | | | |
| | | | | | $ 162,776.00 |

# EXHIBIT "C"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to Web Consulting-Dave Conklin

**Source:** PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| Bank of Shorewood | 06/01/11 | | Web Consulting-Dave Conklin | $          - | $  2,500.00 |
| Bank of Shorewood | 06/07/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 06/13/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 06/21/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 06/28/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 07/06/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 07/12/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 07/19/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 07/26/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 08/02/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 08/09/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 08/16/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 08/23/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 08/30/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 09/07/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 09/13/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 09/20/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 09/27/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 10/04/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 10/12/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 10/18/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 10/24/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 11/01/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 11/08/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 11/15/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 11/22/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| Bank of Shorewood | 11/29/11 | | Web Consulting-Dave Conklin | - | 2,500.00 |
| | | | | $          - | **$67,500.00** |

# EXHIBIT "D"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT
D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III
CASE NO: 1:19-CV-08454
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

## Transfers to Conklin & Courtright LLC

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Alpha Sort | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| Bill.com | 03/02/17 | | Conklin & Courtright LLC | $         - | $   3,500.00 |
| Bill.com | 03/06/17 | | Conklin & Courtright LLC | - | 3,500.00 |
| Bill.com | 03/13/17 | | Conklin & Courtright LLC | - | 3,000.00 |
| HB 5912 | 05/02/17 | | Conklin & Courtright LLC | 20.00 | - |
| HB 5912 | 06/01/17 | | Conklin & Courtright LLC | 80.00 | - |
| | | | | | |
| | | | | $     100.00 | $ 10,000.00 |
| | | | | | |

# EXHIBIT "E"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to Prospect MX

**Source:** QuickBooks

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| Bank of Shorewood | 01/10/10 | | Prospect MX | $       - | $    6,000.00 |
| Bank of Shorewood | 02/11/10 | | Prospect MX | - | 8,000.00 |
| Bank of Shorewood | 03/11/10 | | Prospect MX | - | 9,350.00 |
| Bank of Shorewood | 04/11/10 | | Prospect MX | - | 10,000.00 |
| Bank of Shorewood | 05/11/10 | | Prospect MX | - | 11,000.00 |
| Bank of Shorewood | 06/15/10 | | Prospect MX | - | 10,000.00 |
| Bank of Shorewood | 07/15/10 | | Prospect MX | - | 10,000.00 |
| Bank of Shorewood | 08/15/10 | | Prospect MX | - | 10,000.00 |
| Bank of Shorewood | 09/25/10 | | Prospect MX | - | 5,000.00 |
| | | | | $       - | $  79,350.00 |
| | | | | | |

# EXHIBIT "F"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to Jodi Conklin

**Source:** PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| HB 5912 | 02/23/17 | 02/23/17 | Conklin, Jodi | $      - | $      422.89 |
| HB 5912 | 03/09/17 | 03/09/17 | Conklin, Jodi | - | 756.60 |
| HB 5912 | 03/23/17 | 03/23/17 | Conklin, Jodi | - | 636.78 |
| HB 5912 | 04/06/17 | 04/06/17 | Conklin, Jodi | - | 884.74 |
| HB 5912 | 04/20/17 | 04/20/17 | Conklin, Jodi | - | 567.35 |
| HB 5912 | 05/04/17 | 05/04/17 | Conklin, Jodi | - | 52.95 |
| HB 5912 | 05/04/17 | 05/04/17 | Conklin, Jodi | - | 800.28 |
| HB 5912 | 05/18/17 | | Conklin, Jodi | - | 805.48 |
| HB 5912 | 06/01/17 | 06/01/17 | Conklin, Jodi | - | 841.76 |
| HB 5912 | 06/15/17 | 06/15/17 | Conklin, Jodi | - | 663.32 |
| HB 5912 | 06/29/17 | 06/29/17 | Conklin, Jodi | - | 673.80 |
| HB 5912 | 07/13/17 | | Conklin, Jodi | - | 164.51 |
| HB 5912 | 07/27/17 | | Conklin, Jodi | - | 52.28 |
| | | | | $      - | $      7,322.74 |

# EXHIBIT "G"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Transfers to Emily L. Conklin**

Source: PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| HB 5912 | 01/29/15 | | ACH | Conklin, Emily L. | $     - | $     203.00 |
| HB 5912 | 02/05/15 | | ach | Conklin, Emily L. | - | 203.00 |
| HB 5912 | 02/12/15 | | ach | Conklin, Emily L. | - | 203.00 |
| HB 5912 | 02/19/15 | | ach | Conklin, Emily L. | - | 203.00 |
| HB 5912 | 02/26/15 | | ach | Conklin, Emily L. | - | 203.00 |
| HB 5912 | 03/05/15 | | ach | Conklin, Emily L. | - | 203.00 |
| HB 5912 | 08/24/16 | 08/24/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 08/31/16 | 08/31/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 09/07/16 | 09/07/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 09/14/16 | 09/14/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 09/21/16 | 09/21/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 09/28/16 | 09/28/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 10/05/16 | 10/05/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 10/12/16 | 10/12/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 10/19/16 | 10/19/16 | DD | Conklin, Emily L. | - | 719.20 |
| HB 5912 | 10/26/16 | 10/26/16 | DD | Conklin, Emily L. | - | 719.20 |
| PayPal | 10/27/16 | | eft102720162 | Conklin, Emily L. | - | 351.62 |
| HB 5912 | 11/03/16 | 11/03/16 | DD | Conklin, Emily L. | - | 1,207.84 |
| HB 5912 | 11/17/16 | 11/17/16 | DD | Conklin, Emily L. | - | 1,468.91 |
| HB 5912 | 12/01/16 | 12/01/16 | DD | Conklin, Emily L. | - | 1,468.91 |
| HB 5912 | 12/15/16 | 12/15/16 | DD | Conklin, Emily L. | - | 1,468.91 |
| HB 5912 | 12/29/16 | 12/29/16 | DD | Conklin, Emily L. | - | 1,468.91 |
| HB 5912 | 01/12/17 | 01/12/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 01/26/17 | 01/26/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 02/09/17 | 02/09/17 | DD | Conklin, Emily L. | - | 1,620.64 |
| HB 5912 | 02/23/17 | 02/23/17 | DD | Conklin, Emily L. | - | 1,812.58 |
| HB 5912 | 02/23/17 | 02/23/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 03/09/17 | 03/09/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 03/23/17 | 03/23/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 03/23/17 | 03/23/17 | DD | Conklin, Emily L. | - | 199.22 |
| HB 5912 | 04/06/17 | 04/06/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 04/20/17 | 04/20/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 05/04/17 | 05/04/17 | DD | Conklin, Emily L. | - | 126.71 |
| HB 5912 | 05/04/17 | 05/04/17 | DD | Conklin, Emily L. | - | 1,470.64 |
| HB 5912 | 05/18/17 | 05/18/17 | DD | Conklin, Emily L. | - | 1,467.00 |
| HB 5912 | 06/01/17 | 06/01/17 | DD | Conklin, Emily L. | - | 1,471.17 |
| HB 5912 | 06/15/17 | 06/15/17 | DD | Conklin, Emily L. | - | 1,471.17 |
| HB 5912 | 06/29/17 | 06/29/17 | DD | Conklin, Emily L. | - | 1,471.17 |

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to Emily L. Conklin

**Source:** PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Reference No. | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|---|
| HB 5912 | 07/13/17 | | DD | Conklin, Emily L. | - | 1,471.17 |
| HB 5912 | 07/27/17 | | DD | Conklin, Emily L. | - | 1,471.17 |
| HB 5912 | 08/10/17 | 08/10/17 | DD | Conklin, Emily L. | - | 1,471.17 |
| HB 5912 | 08/14/17 | 08/14/17 | DD | Conklin, Emily L. | - | 1,060.72 |
| | | | | | $        - | $ 42,724.11 |
| | | | | | | |

# EXHIBIT "H"

**SECURITIES AND EXCHANGE COMMISSION V. TODAYS GROWTH CONSULTANT**
**D/B/A THE INCOME STORE AND KENNETH D. COURTRIGHT, III**
**CASE NO: 1:19-CV-08454**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

## Transfers to Haley L. Conklin

**Source:** PNC 9798, HB 5912 & Quickbooks records.

| Bank Account | GL Date | Statement Clearing Date | Payee / Received From | Deposits / Credits | Checks / Debits |
|---|---|---|---|---|---|
| HB 5912 | 08/24/16 | 08/24/16 | Conklin, Haley L. | - | $    225.82 |
| HB 5912 | 08/31/16 | 08/31/16 | Conklin, Haley L. | - | 296.62 |
| HB 5912 | 08/31/16 | 08/31/16 | Conklin, Haley L. | - | 543.91 |
| HB 5912 | 09/07/16 | 09/07/16 | Conklin, Haley L. | - | 250.09 |
| HB 5912 | 09/14/16 | 09/14/16 | Conklin, Haley L. | - | 242.23 |
| HB 5912 | 09/21/16 | 09/21/16 | Conklin, Haley L. | - | 286.12 |
| HB 5912 | 09/28/16 | 09/28/16 | Conklin, Haley L. | - | 297.03 |
| HB 5912 | 10/05/16 | 10/05/16 | Conklin, Haley L. | - | 263.65 |
| HB 5912 | 10/12/16 | 10/12/16 | Conklin, Haley L. | - | 309.64 |
| HB 5912 | 10/19/16 | 10/19/16 | Conklin, Haley L. | - | 147.13 |
| HB 5912 | 11/17/16 | 11/17/16 | Conklin, Haley L. | - | 59.47 |
| HB 5912 | 12/15/16 | 12/15/16 | Conklin, Haley L. | - | 15.57 |
| HB 5912 | 12/29/16 | 12/29/16 | Conklin, Haley L. | - | 17.78 |
| HB 5912 | 01/12/17 | 01/12/17 | Conklin, Haley L. | - | 465.68 |
| HB 5912 | 02/09/17 | 02/09/17 | Conklin, Haley L. | - | 0.59 |
| HB 5912 | 07/13/17 | | Conklin, Haley L. | - | 101.73 |
| HB 5912 | 07/13/17 | | Conklin, Haley L. | - | 348.86 |
| HB 5912 | 07/27/17 | | Conklin, Haley L. | - | 711.27 |
| HB 5912 | 08/10/17 | 08/10/17 | Conklin, Haley L. | - | 678.12 |
| HB 5912 | 08/24/17 | 08/24/17 | Conklin, Haley L. | - | 706.19 |
| HB 5912 | 09/07/17 | 09/07/17 | Conklin, Haley L. | - | 867.91 |
| HB 5912 | 09/21/17 | 09/21/17 | Conklin, Haley L. | - | 867.90 |
| HB 5912 | 10/05/17 | 10/05/17 | Conklin, Haley L. | - | 867.89 |
| HB 5912 | 10/19/17 | 10/19/17 | Conklin, Haley L. | - | 867.90 |
| HB 5912 | 11/02/17 | 11/02/17 | Conklin, Haley L. | - | 867.90 |
| HB 5912 | 11/16/17 | 11/16/17 | Conklin, Haley L. | - | 867.90 |
| HB 5912 | 11/30/17 | 11/30/17 | Conklin, Haley L. | - | 867.90 |
| HB 5912 | 12/14/17 | 12/14/17 | Conklin, Haley L. | - | 276.79 |
| | | | | $      - | **$12,319.59** |

# EXHIBIT "I"

Dave Conklin
604 Millcross Road
Lancaster, PA 17601
(717) 598-1950

February 17, 2020

Michael Brennan
U.S. Securities and Exchange Commission
100 F St. NE, Mail Stop 5041
Washington, DC 20549-5041

Mr. Brennan,

This letter is being provided to give you an overview of the files I'm supplying in response to the subpoena for documents I received the evening of Thursday, February 13, 2020.

Following, I have listed the folders with an explanation of their contents.

To bring clarity around the following folders and my comments, Ken (Income Store) was a client of Conklin Web Properties, LLC (a company I have solely owned since 2010). He hired Conklin Web Properties to hire, build and train a marketing team, market websites, and launch an office in Quarryville, PA. From approximately July, 2014 through August, 2017 my company's primary focus was growing Income Store's marketing team. After August, 2017, he began using my team for select website projects only.

**Dropbox**
This is every document I found in my dropbox account related to Ken Courtright, Income Store, etc. Prior to 2018, there would have been other documents I was shared on and no longer have access to.

**Conklin & Courtright**
This is an LLC that was created as Ken and I were exploring the idea of launching an agency together in early 2017. We did a soft launch, and decided not to move forward after selling a few small clients. I included all of the bank statements, the operating agreement, and the planning documents still on my drive.

**Emails**
You requested that I share the search I used to compile these emails. It was:
to:ken@incomestore.com OR from:ken@incomestore.com OR to:ken@todaysgrowthconsultant.com OR "ken courtright" OR "income store" OR "incomestore.com" OR "tgc" OR "today's growth" OR "todays growth"

**Google Drive**
Similar to dropbox above, this is everything I discovered that is in my Google Drive related to this matter.

**Text Messages**
These are screenshots of every communication I have had via text that is still on my phone.

**Invoices**
There are two subfolders here... Unpaid and Paid. These are the invoices I found in Quickbooks that document work that Ken / Income Store had paid us to do since I left my Consultant post there. The unpaid invoices represent monies we are still owed by Income Store.

**Skype**
This is every skype message I found when searching my skype account related to ken.

**Payments Conklin Web Properties received from Income Store / Ken Courtright fit into 3 categories:**

1. Monthly Consulting Payments
   The first monthly consulting payment I have recorded payable to Conklin Web Properties, LLC is from 2/6/2014. Prior to this, Ken was a client of ProspectMX, my previous marketing agency. In the emails, you can see communications between me and Ken (or about Ken/TGC/Income Store) during this period.
   a. Ken paid Conklin Web Properties approximately $4,000 per week to do consulting on specific sites in early 2014.
   b. Around July, 2014, Ken asked for more time from me personally to help him build a marketing team and focus on marketing more sites. So, we worked out a deal to make that happen and his weekly consulting fee was adjusted to $5,200. This lasted until approximately August, 2017. My work during this time revolved around hiring, training and growing a digital marketing team and offering strategic digital marketing advice for specific site.
2. Project Based Payments
   a. After August, 2017, all payments my company received by Income Store were related to specific marketing related projects. You can find the details of these payments by looking at the invoices in the folder I referenced above.
3. Reimbursements
   a. When I was hiring and training the marketing team in Quarryville and doing the office build out, Ken didn't have a credit card for me to use. So, Conklin Web Properties would pay for things as a billable expense and Ken would reimburse Conklin Web Properties. Within the emails, you can see the documentation of reimbursements that I submitted to the various accounting individuals Ken had on the team.

Lastly, Conklin Media is a DBA of Conklin Web Properties, LLC. Last year, we decided to launch Conklin Media, LLC to separate the agency clients from our other ventures, such as our Amazon Store. I only mention this because you were clear to mention Conklin Media and Conklin Web Properties separately, and I felt it appropriate to give clarity.

Please let me know if you have any additional questions or concerns,


Sincerely,


Dave Conklin