**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No.  1:19-cv-08454 (filed in the United States District Court, Northern District of Illinois) |
| v. | |
| TODAY'S GROWTH CONSULTANT, INC. (dba THE INCOME STORE) | |
| and | |
| KENNETH D. COURTRIGHT, III, | |
| Defendants. | |

| | |
|---|---|
| MELANIE E. DAMIAN, AS RECEIVER OF TODAY'S GROWTH CONSULTANT, INC. (dba THE INCOME STORE), | ANCILLARY CASE NO. Civil Action No.  5:20-cv-006297 (JMG) |
| Plaintiff, | |
| v. | |
| CONKLIN WEB PROPERTIES, LLC, d/b/a CONKLIN MEDIA, CONKLIN MEDIA LLC, CONKLIN & COURTRIGHT LLC, PROSPECT MX, LLC, DAVE CONKLIN, JODI CONKLIN, EMILY LASKO, and HALEY HIRTHLER | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS CONKLIN WEB PROPERTIES LLC,
CONKLIN MEDIA LLC, CONKLIN & COURTRIGHT, LLC
AND DAVE CONKLIN'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................... 2

III.    ARGUMENT ........................................................................................................ 4

      A.    The Receiver Lacks Standing to Pursue Fraudulent Transfers under
           UFTA on Behalf of TGC's Creditors .................................................... 4

      B.    The Receiver's Complaint Fails to Allege Claims with the
           Specificity Required by Rule 9(b) Rendering the Claims Lacking
           Necessary Factual Support ....................................................................... 7

      C.    The Complaint Fails to Allege Facts Supporting Adequate Facts to
           Support the Fraudulent Transfer Claims ............................................... 10

      D.    The Complaint Fails to State a Claim for Constructive Fraudulent
           Transfer Under UFTA 740 ILCS 160/5(a)(2) and for Unjust
           Enrichment ............................................................................................... 11

      E.    The Receiver is Time-Barred from Recovering Most of the
           Transfers at issue in Count II for Constructive Fraudulent Transfer ................... 14

      F.    The Receiver's Claims are Barred by the Doctrine of *in pari
           delicto* and Lack of standing ................................................................. 15

IV.     CONCLUSION .................................................................................................... 17

## I. **INTRODUCTION**

The Receiver's Complaint must be dismissed because the claims asserted are legally defective, factually unsupported, and lack merit. Plaintiff, the Receiver for Today's Growth Consultant, Inc. dba The Income Store ("TGC"), brings this action in connection with a lawsuit filed by the Securities and Exchange Commission ("SEC") against TGC and Kenneth Courtright, III ("Courtright") in the United States District Court for the Northern District of Illinois, Civil Action No. 1:19-cv-08454 (the "SEC Action"). The Receiver alleges that Courtright, as principal and President of TGC, controlled and dominated TGC causing it to engage in a Ponzi scheme beginning in 2017.

The Complaint seeks to avoid payment made to TGC's third-party website consultants, Conklin Web Properties  LLC d/b/a Conklin Media, Conklin Media LLC, and Conklin & Courtright (the "Conklin Entities") and David Conklin (together with the Conklin Entities, the "Moving Defendants") dating back to 2010 based on a Ponzi scheme that is only alleged to have occurred from 2017 onward. The Moving Defendants focused on providing marketing services to the websites operated by TGC so they would generate revenue for the benefit of investors. Indeed, the Receiver has admitted to the Court overseeing the SEC Action that the websites are valuable assets of TGC. The Receiver admits that since 2017, the websites generated approximately $9 million in revenue for TGC. Inexplicably, TGC claims it received no reasonably equivalent value for the payments made to Moving Defendants.

The facts alleged in the Complaint demonstrate that the Receiver's claims have no merit. Fraudulent transfer claims can only be asserted by creditors and the Receiver, standing in the shoes of TGC, is actually the debtor-transferor, not a creditor. Furthermore, many of the alleged constructive fraudulent transfers are clearly time-barred from recovery. Importantly, the Receiver's allegations in this case and its statements in the SEC Action strongly contradict its

18281861.1

position that the defendants failed to provide reasonably equivalent value to TGC.  Lastly, the

Receiver's claims for aiding and abetting are barred by the doctrine of *in pari delicto*.  The

Receiver, standing in the shoes of TGC, may not benefit from the company's wrongful conduct.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Plaintiff in this matter is the Receiver of TGC and was appointed as Receiver by the

Illinois District Court in the SEC Action.  Compl. ¶ 7 [ECF Doc. 1].  In both this case and the

SEC Action, it is alleged that from 2017 to October 2019, TGC, by and through Courtright,

solicited payments from investors ("website partners") to create websites that would provide

revenue streams payable, in part, to the website partners.  *See*, Compl. ¶¶ 23-27.  The Receiver

acknowledges that the websites generated millions of dollars in revenue from 2017-2019, but the

revenue was not sufficient to cover the payments TGC agreed to pay to its investors.  Compl.

¶¶27-31.  The Receiver alleges that from 2017 onward, Courtright began paying new investors'

up-front payments to cover obligations to earlier investors engaging in a Ponzi scheme.  Compl.

¶ 34.

The Receiver alleges that Moving Defendants were paid by TGC for providing website

consulting and marketing services.  Compl. ¶¶ 52-53.  Since 2017, the websites generated

approximately $9 million in advertising product sales and revenue for TGC.  Compl. ¶¶ 29-30.

The Receiver claims that Moving Defendants were paid a total of $1,380,692.52 since 2010 for

providing website consulting and marketing services.  Compl., Ex. A, B, C, and D.  Inexplicably,

the Receiver alleges that TGC received no reasonably equivalent value from the payments made

to the Moving Defendants.  *See*, Compl. ¶54.  In the SEC Action, however, the Receiver has

filed a report with the Court listing the websites as an asset and indicating that TGC plans to

transfer their ownership to some website partners in lieu of sharing any monetary recovery by

2

TGC and as consideration for releases benefitting TGC.[1]  *See*, SEC Action, ECF Doc. 109 pp. 2-4 (referencing Receiver's Initial Status Report ECF Doc. 45 pp. 22, Receiver's Second Status Report, ECF 81 pp. 9-10, and Motion to Approve Plan ECF 53 pp. 4 n.4).

The Complaint, consistent with the allegations in the SEC Action Complaint, alleges that from 2017 to October 2019, Courtright used TGC to engage in a fraudulent scheme.  Compl. ¶¶ 23, 29; see also SEC Action Compl. ¶¶ 2, 5, 6, 21, 30, 33, 35, 38 [SEC Action - ECF Doc. 1]. The Receiver's Complaint, like the SEC Action Complaint, only alleges a Ponzi scheme relating to the period from January 2017 forward based on TGC's alleged failure to generate sufficient revenue to cover payments made to investors.  Compl. ¶¶ 23, 29.  Nonetheless, the Receiver's Complaint seeks to recover *all* payments made by TGC to the Defendants – dating back to 2010 - even though the Receiver has not alleged the existence of a Ponzi scheme prior to 2017.  *See*, Compl. ¶¶ 42-50.  The Receiver mischaracterizes the payments to Defendants as "part of a Ponzi scheme" even though the Moving Defendants were third party vendors, not investors overpaid from funds provided by other investors.[2]

The Receiver's Complaint asserts a claim against the Defendants for actual fraudulent transfer pursuant to Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS §160/5(a)(1) ("actual intent to hinder, delay or defraud any creditor of the debtor"); constructive fraudulent transfer pursuant to UFTA 740 ILCS §160/5(a)(2); and unjust enrichment.  See. Compl. Counts I, II, and III.  The Receiver also asserts claims against Dave Conklin for aiding and abetting fraud (Count IV) and aiding and abetting breach of fiduciary duty (Count V).  The Receiver

---

[1] When deciding a motion to dismiss, the Court is permitted to consider the allegations contained in the Complaint, attached exhibits, matters of public record, and documents referred to or relied upon in the Complaint.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[2] According to the Receiver's logic, the utility company was also part of the Ponzi scheme since it was paid by TGC, and by keeping the lights on, "only facilitated and perpetuated the fraud against current investors and recruiting new investors." Compl. ¶ 84.

alleges that the website partners are creditors of TGC.  Compl. ¶16.  The Receiver also alleges, confusingly, that the Receiver is pursuing claims against the Defendants, "on behalf of receivership entity TGC, as a 'creditor' of TGC." Compl. ¶ 22.  Thus, it appears that the receiver is attempting to assert claims as a creditor, against itself as a debtor-transferor.

## III.   ARGUMENT

### A.   THE RECEIVER LACKS STANDING TO PURSUE FRAUDULENT TRANSFERS UNDER UFTA ON BEHALF OF TGC'S CREDITORS

Attempts to prevent fraudulent conveyances date back to the Statute of 13 Elizabeth passed by Parliament in 1571.  *Mellon Bank, N.A. v. Metro Communic'ns, Inc.,* 945 F.2d 635, 644 (3d Cir. 1991).  The statute was aimed at preventing overburdened debtors from transferring their assets to a cooperative third party who would transfer the assets back to the debtor after creditors gave up their attempts to recover against the debtor.  *Id.* at 644-45.  The scheme acted as a fraud against the creditors because assets were transferred out of the debtor's estate without some balancing asset being transferred in exchange.  See *id.* at 645.  Such a scheme frustrates creditors because it drains the debtor's estate of assets decreasing the ability of creditors to recover on debts owed to them by the debtor.  Thus, every fraudulent transfer includes three parties: the creditor, the debtor-transferor, and the transferee.

The Receiver's Complaint alleges both type of fraudulent transfers under Illinois law: fraud in fact (actual fraudulent transfer) under 740 ILCS 160/5(a)(1) and fraud in law (or constructive fraudulent transfer) under 740 ILCS 160/5(a)(2).[3]  The Receiver, however, lacks standing to assert any claims under UFTA because it is not a "creditor" under the statute.

---

[3] Defendants do not contest the application of Illinois law to the Receiver's fraudulent transfer claims because the alleged transfers were made by TGC as the debtor.  Pennsylvania's Uniform Voidable Transaction Act states that claims for fraudulent transfer are governed by the local law of the jurisdiction in which the debtor is located when the transfer is made.  *See,* 12 Pa.C.S. §5110(b).  Thus, because TGC was headquartered in Illinois when the alleged transfers were made, Illinois law applies to such claims.  The application of Illinois law to Counts I and II, however, does not require that Illinois law also governs the other claims asserted in the Complaint.  Choice of law analysis is

Both types of fraudulent transfers only provide that "[a] transfer made . . . by a debtor is fraudulent *as to a creditor*," 740 ILCS 160/5(a) (emphasis added).  Similarly, the UFTA's remedies provisions apply only to creditors. See 740 ILCS 160/8(a).  The UFTA defines a creditor as a person who has a claim and defines "claim" broadly to include any right to payment.  *See*, 740 ILSC §160/2(c)-(d).  While the definition of "claim" is broad, a creditor must show that the debtor owes or potentially owes a "payment" to the creditor.  *See*, *A.P. Prop., Inc. v. Goshinsky*, 186 Ill. 2d 524, 528-29 (Ill. 1999).  The UFTA defines a "debtor" as a person who is liable on a claim.  740 ILCS 160/2(f).

The Receiver alleges that TGC made alleged fraudulent transfers to the Defendants.  Thus, the Receiver is alleging that TGC is the debtor-transferor.  Because the Receiver stands in the shoes of TGC, and is not separate from TGC, it is debtor-transferor in the transactions.  Under the circumstances alleged in the Complaint, TGC, as debtor-transferor, is liable to its creditors.  Those creditors, however, are not the Plaintiffs in this case and TGC has no standing to assert claims on their behalf.  The Receiver is attempting to assert claims on behalf of the allegedly defrauded investors – creditors of TGC – even though the Receiver is not a class representative and lacks statutory authority to act as a class representative.

There is no common law or statutory "creditor" status conferred upon SEC equity receivers.  For example, the Bankruptcy Code gives bankruptcy trustees status as judicial lien creditors over the assets of the estates over which they preside and preempts state statutes to the contrary.  11 U.S.C. §544.  Instead, an SEC equity receivers' status is defined by their relationship to the transferor under the relevant state fraudulent transfer statute.  While the

---

issue-specific, therefore, different states' laws may apply to different issues in a single case, a principle known as "depecage."  *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

Receiver may have been appointed to collect TGC's assets and distribute them for the benefit of its creditors, that does not make the Receiver a class representative for the creditors.

The plain language of the UFTA provides relief only to creditors of the debtor-transferor. Because TGC is the debtor-transferor, not a creditor of TGC, the Receiver cannot recover under the UFTA claims.  *See*, *Marian v. TDI Inc.*, 591 F.3d 137, 147 (3d Cir. 2010) (receiver had standing only to bring claims on behalf of the corporation, because it is the "general rule that an equity receivership may sue only to redress injuries to the entity in receivership"); *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1306 (11th Cir. 2020)( "[a]lthough a receivership is typically created to protect the rights of creditors, the receiver is not the class representative for creditors and cannot pursue claims owned directly by the creditors .... Rather, he is limited to bringing only those actions previously owned by the party in receivership."); *Eberhard v. Marcu*, 530 F.3d 122, 132-134 (2d Cir. 2008) (holding that the receiver could not assert fraudulent-transfer claims on behalf of creditors); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990) (holding that the receiver did not have standing to represent creditors); *In re Wiand*, 2007 WL 963162, *10, (M.D. Fla. 2007)( SEC receiver lacked status as a "creditor" under the fraudulent transfer statute and having stepped into the shoes of the debtor-transferor, could not recover under a fraudulent transfer statute that only permitted claims by creditors); *cf. Liberie Capital Grp., LLC v. Capwill*, 248 F. App'x. 650, 656 (6th Cir. 2007) ("when a receiver is appointed over a corporation, the receiver may only assert claims that could have been asserted by the corporation, and the receiver lacks standing to institute action on behalf of investors in the corporation"); *Goodman v. FCC*, 182 F.3d 987, 991-992 (D.C. Cir. 1999) (receiver could not assert personal claims of the entity's licensees against the FCC, based on the "rule that a receiver

has authority to bring a suit only if the entity could itself properly have brought the same

action").

While a receiver may have the right to collect and distribute TGC's assets for the benefit

of creditors, that does not make TGC itself a creditor. The statutory language in 740 ILCS

160/5(a) prevents the Receiver from pursuing fraudulent transfer claims against the Defendants.

The Receiver's good intentions do not supersede the clear language and limitations applicable to

its statutory claims. Similarly, the Receiver lacks authority to act as the class representative to

pursue claims belonging to TGC's creditors. *Cf. Fleming v. Lind-Waldock & Co.*, 922 F.2d 20,

25 (1st Cir. 1990)(finding that dual role as receiver for the corporation and representative of

investors with claims against the corporation would present an inherent conflict). The Receiver,

standing in TGC's shoes, is limited to asserting claims within the company's rights. Because

TGC is a debtor-transferor, it lacks standing to assert claims as a creditor under the UFTA. It

follows, therefore, that Counts I and II must be dismissed with prejudice.

B.   **THE RECEIVER'S COMPLAINT FAILS TO ALLEGE CLAIMS WITH THE SPECIFICITY REQUIRED BY RULE 9(B) RENDERING THE CLAIMS LACKING NECESSARY FACTUAL SUPPORT**

All of the Receiver's claims against Defendants arise out of their alleged connection to

TGC and TGC's alleged commission of a fraudulent Ponzi scheme from 2017-2019.[4] Rule 9(b)

requires a party to state with particularity the circumstances constituting fraud or mistake.

Courts have interpreted Rule 9(b) to require plaintiffs to "plead the who, what, when, where and

how: the first paragraph of any newspaper story." *Institutional Investors Group v. Avaya, Inc.*,

74 F.3d 242, 253 (3d Cir. 2009). Rule 9(b) applies to fraudulent transfer claims under Illinois'

---

[4] Plaintiff's claim for unjust enrichment falls into the category of claims based on unlawful or improper conduct established by an underlying claim, such as fraud, where the unjust enrichment claim is complimentary of the fraud claim. Such claims for unjust enrichment cannot persist independent of an underlying claim for wrongful conduct. See, *Whitaker v. Herr Foods, Inc.*, 198 F.Supp.3d 476, 492-93 (Pa. E.D. 2016).

UFTA.  *General Elec. Capital Corp v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997).  The Receiver's Complaint makes conclusory allegations that parrot the language from the UFTA and fails to allege facts with particularity as required by Rule 9(b).

The Receiver alleges that the Defendants "knew or should have known" certain information without alleging any facts to demonstrate *why* Defendants should have known.  *See*, *e.g.*, Compl. ¶¶ 56, 90, 95, 101.  The Receiver's Complaint contains numerous allegations based on "information and belief" that are inconsistent with pleading standard of Rule 9(b).  *See*, Compl. ¶¶ 9-12, 42-43.  The Receiver also liberally uses the phrases "all relevant times" and "at all times material hereto" to avoid providing specific allegations as to timing.  Compl. ¶¶ 8-14, 38, 40, 56, 70.  Combined, these loose pleading phrases deprive the Complaint of the particularity required to comply with Rule 9(b).  Allegations that Defendants knew of a condition are inadequate to meet the standard under Rule 9(b).  *See*, *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 409 (conclusory allegations that defendant knew of product defect were inadequate to support fraud claim based on alleged defect).  Here, the Receiver has included conclusory allegations that Defendants should have known about Courtright's Ponzi scheme, but without any facts supporting that conclusion.

While the Complaint pursues aiding and abetting claims against Mr. Conklin, it fails to specifically allege how or when Conklin purportedly learned of Courtright's scheme.  To prove the tort of aiding and abetting, a plaintiff must prove the defendant knowingly and substantially assisted "the principal violation" and that the defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance."  *Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 127 (3d Cir. 1997).  The Complaint includes conclusory allegations that Conklin knew about TGC's fraud and substantially assisted the fraud, but fails to

8

assert any specific facts that indicate how a third party consultant would have such knowledge. The Complaint does not include any allegations indicating that Conklin was aware of TGC's finances, or had access to and knowledge of the terms of TGC's agreements with the website partners.

The Receiver relies upon generic conclusory statements that restate the elements of its claims and offer unsupported conclusions. *See*, *e.g*., Compl. ¶¶ 54-61, 68, 70-72, 83-85, 95, 101. The Receiver alleges that Defendants received the transfers "as compensation and/or commissions for the services that they provided to TGC" but then claims without any basis that those services served "to perpetuate [TGC's] fraudulent scheme." Compl. ¶70. There are no *facts* that allege how Defendants being paid for their services contributed to the Ponzi scheme. The Receiver cannot assume that Defendants should have known of TGC's fraud and cannot premise its claims upon bald legal conclusions.[5]   Because the Receiver does little more than offer conclusory allegations that parrots the language from the UFTA and elements of the claims, the Complaint fails to meet the standard required by Rule 9(b) and must be dismissed.

The Complaint alleges that Dave Conklin is an "insider," but fails to state *when* he was an alleged insider or the facts upon which he could be considered an alleged insider.  The only direct payments made to Mr. Conklin were in 2011 and the records indicate that he was being paid for consulting work.  *See*, Compl, Ex. C.  As a result, the Complaint lacks the requisite specificity because it fails to identify how Mr. Conklin was an "insider" of TGC in light of the allegations in the Complaint that he worked on behalf of separate entities that were contracted by TGC to perform services.

---

[5] A court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, 908 (3d Cir. 1997).

C.     **THE COMPLAINT FAILS TO ALLEGE ADEQUATE FACTS TO SUPPORT THE FRAUDULENT TRANSFER CLAIMS**

All of the claims in the Complaint are based on TGC's alleged commission of a fraudulent Ponzi scheme from 2017-2019. It is particularly troubling that the Receiver is attempting to avoid transfers dating back to 2010 based on general allegations that TGC engaged in a Ponzi scheme between 2017 and 2019. The Complaint fails to allege any conduct relevant to TGC prior to 2017, therefore, there is no justifiable basis for the Receiver to seek damages prior to that point in time.

The Receiver has absolutely failed to allege any facts whatsoever demonstrating how the transfers prior to 2017 are actionable. The alleged existence of a Ponzi scheme beginning in 2017 cannot support the presumption that every transfer ever made to the Defendants prior to that point was also fraudulent. Likewise, the Receiver cannot avoid the requirement that it provide a factual basis supporting its claims by relying upon meaningless "stock phrases" such as "all relevant times" and "at all times material hereto" to avoid pleading necessary facts. Based on the foregoing, the Court must dismiss or limit the Receiver's claims based on transfers occurring prior to 2017.

While the Receiver summarily alleges that Mr. Conklin was an "insider" of TGC, the minimal facts alleged in the Complaint demonstrate otherwise. Under ILSC § 160/2 the term "insider" includes, if the debtor is a corporation: a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is a general partner, or a relative of a general partner, director, officer, or person in control of the debtor. The Receiver is in control of TGC's records and is well aware that Dave Conklin was not an employee or officer of TGC.

The Complaint acknowledges that Conklin Web Properties, LLC, Conklin Media, and

Conklin & Courtright are entities that are independent from TGC.  *See*, Compl. ¶¶8-9, 11, 52, and Ex. I.  The Complaint also attaches a letter from Dave Conklin in response to a subpoena from the SEC, which states that he was a hired consultant for TGC through his entities.  *See*, Compl. at Ex. I.  The Complaint does not allege that the statements by Mr. Conklin to the SEC are false.  Instead, the Complaint simply ignores Mr. Conklin's statements and tries to recharacterize his relationship without any factual basis.  The Complaint shows that Mr. Conklin was not directly employed by TGC and the only alleged payments made directly to Mr. Conklin were in 2011, well before the time period of the alleged Ponzi scheme, and by TGC's own records, were for consulting work.  The limited facts alleged in the Complaint contradict the Receiver's effort to paint Mr. Conklin as an "insider" of TGC.

> **D.      THE COMPLAINT FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUDULENT TRANSFER UNDER UFTA 740 ILCS 160/5(A)(2) AND FOR UNJUST ENRICHMENT**

The Complaint together with the Receiver's statements in the SEC Action demonstrate that the Receiver's bald-face conclusion that Defendants provided no reasonable equivalent value to TGC, is false.  Transfers to third parties are supported by fair consideration when the debtor benefits indirectly.  "Indirect benefits may include synergy, increased access to capital, safeguarding a source of supply and protecting customer relationships." *Leibowitz v. Parkway Bank Trust Co. (In re Image Worldwide, Ltd.),* 139 F.2d 574, 578-79 (7th Cir. 1998).  Whether a transfer was fraudulent when made depends on conditions that existed when it was made, not on what happened later to affect the timing of the company's collapse.  *Boyer v. Crown Stock Distrib., Inc.,* 587 F.3d 787, 795 (7th Cir. 2009).

The Receiver's claim for constructive fraudulent transfer is flawed because it relies upon the existence of the Ponzi scheme run by Courtright to completely discount the value of any services provided by the Defendants.  Thus, the Receiver seeks to taint the transfers from TGC to

the Moving Defendants, its vendors, based on TGC's conduct toward its investors.  Section

5(a)(2) only considers a transfer fraudulent as to a creditor if it is made "without receiving a

reasonably equivalent value *in exchange for the transfer*…."  By the text of the statute, the focus

of the inquiry is narrowly focused on the transfers that are allegedly fraudulent – not based on

debtor's overall business.

The Receiver cannot deny the value of Defendants' services by claiming that transfers to

Defendants only served to assist the company, which allowed TGC to keep up the fraud against

investors.  Such conduct does not make Defendants part of the Ponzi scheme.  By the same

argument, payments to the utility company were also part of the Ponzi scheme since paying the

electric company kept the lights on and facilitated TGC's further fraud.   Importantly, there was

no depletion of TGC's assets by paying for the services it received from Defendants because

such payments provide adequate consideration in the form of a release of any claims the

defendants could have asserted against TGC for non-payment of services. Moreover, the

Complaint admits that the websites that Defendants developed and marketed generated millions

of dollars of revenue far in excess of the amounts paid to Defendants.[6]

The Complaint references and attaches Mr. Conklin's letter to the SEC sent in response

to a subpoena. Compl. ¶52, Ex. I.  That response stated that Mr. Conklin and the Conklin Entities

were hired by TGC to perform work on the websites that generated TGC's revenue.  Notably, the

Receiver does not allege that Mr. Conklin's response to the SEC was false.  The Receiver has

affirmatively stated to the court in the SEC Action that the websites have value – and has listed

them as assets and stated an intent to use them as valuable consideration. *See*, SEC Action, ECF

---

[6] The Receiver alleges that the websites generated approximately $9 million in revenue between 2017-2019 a multiple of 6.5 times the approximately $1,380,000 Defendants were allegedly paid between *2010*-2019. While it is not an "apples to apples" comparison because of the vastly different time periods involved, the facts alleged in the Complaint demonstrate that TGC benefited from Defendants' website consulting.

45, pp. 7, 22-24.  Specifically, the Receiver obtained approval from the Court in the SEC Action to transfer the websites that were created and improved by the Moving Defendants to the investors as consideration in lieu of any payments recovered through litigation.  *See*, SEC Action, ECF 109, pp. 3 ("All claimants must elect to either release their right to any monetary distribution or to release their rights to their websites.").[7]

The Receiver also alleges that the transfers to the defendants constitute unjust enrichment because they are a product of the Ponzi scheme.  Plaintiff's claims for unjust enrichment against the defendants hinge on the purported fraud by Courtright.  The Complaint alleges that the transfer to the Defendants were "derived from the fraudulent scheme orchestrated by Courtright through TGC" and that it would be unjust for Defendants to keep the transfers because they were a result of the purported Ponzi scheme.  *See*, Compl.  ¶¶ 88-91.  An essential element of any claim for unjust enrichment is that retention of the alleged benefit conferred upon the defendant would be unjust.  *See*, *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 622 Pa. Super. 1999).  But the transfers Plaintiff identifies as "unjust" date to 2010, while the Complaint only alleges the Ponzi scheme existing from 2017.  Under Plaintiff's theory, it is the alleged Ponzi scheme that renders the transfer "unjust" and thus, transfers made prior to Ponzi scheme are *ipso facto* permissible under Plaintiff's theory of the case.

Additionally, there are no allegations indicating how the defendants had knowledge of the fraud such that their retention of the transfers would be unjust.  The facts alleged demonstrate that TGC received significant value from Defendants' services.  Because Plaintiff's claims for unjust enrichment are contradicted by the pleadings, documents attached, public records, and Plaintiff has failed to plead with the particularity under Rule 9(b), the unjust enrichment claim

---

[7] Investors that were "net winners" in the Ponzi scheme had the "option to return their winnings and receive their websites instead."  SEC Action, Order, ECF 109 p. 7.

13

fails to state a claim upon which relief can be granted.

The Receiver cannot have its cake and eat it too.  The Complaint, its attachments, and related public documents demonstrate that TGC received a substantial benefit from its payments to Moving Defendants.  The Receiver cannot take the position that the websites are assets, yet claim there was no value provided by paying the vendors that made the websites valuable.  As a result, the Complaint fails to state claims for relief and must be dismissed.

### E.    THE RECEIVER IS TIME-BARRED FROM RECOVERING MOST OF THE TRANSFERS AT ISSUE IN COUNT II FOR CONSTRUCTIVE FRAUDULENT TRANSFER

The UFTA imposes a four-year statute of repose on constructive fraudulent transfer claims. UFTA 740 ILCS § 160/10.  Specifically, "[a] cause of action with respect to a fraudulent transfer . . . is extinguished unless action is brought . . . under paragraph (2) of subsection(a) of Section 5 . . . within 4 years after the transfer was made…."   UFTA 740 ILCS § 160/10(b).  Because the UFTA sets an outer limit on the right to sue based on the date of a culpable act or omission, it is a statute of repose.  *Malek v. Malek*, 2020 WL 6075871, *4 (N.D. Ill. 2020).  As a result, neither the common law discovery rule nor the doctrine of fraudulent concealment apply to avoid the statute of repose.  *See In re Sandburg Mall Realty Mgmt. LLC*, 563 B.R. 875 (C.D. Ill. 2017) (predicting that the Illinois Supreme Court will determine that neither the discovery rule nor fraudulent concealment apply to the statute of repose in UFTA section 10).

The statute of repose in UFTA section 10 prevents the Receiver from voiding any transfer that occurred prior to December 15, 2016 as a constructive fraudulent transfer.  The Complaint, however, seeks to recover transfers to the Defendants dating back to 2010.  As a result, the Receiver is time barred from recovering the vast majority of transfers at issue in Count II.  This Court should dismiss or limit the Receivers claims in Count II consistent with the statute of repose applicable to such a claim.

14

**F.      THE RECEIVER'S CLAIMS ARE BARRED BY THE DOCTRINE OF *IN PARI DELICTO* AND LACK OF STANDING**

Plaintiff's claims are barred by the doctrine of *in pari delicto*.[8] "The common law doctrine of *in pari delicto* ("in equal fault") is an application of the principle that no court will lend its aid to a man who grounds his action upon an immoral or illegal act." *Wishnefsky v. Riley & Fanelli, P.C.*, 799 A.2d 827, 829 (Pa. Super. 2002)(citing *Fowler v. Scully*, 72 Pa. 456, 467 (Pa. 1872))(quotations omitted).[9]  It would be inequitable for the Receiver to benefit from TGC's wrongful conduct and pursue claims based on its own wrongful conduct.  *See Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010) (noting that a receiver's claim against third parties allegedly involved in helping harm the corporation may be susceptible to an *in pari delicto* defense).

Under Pennsylvania law, the fraud of an officer is imputed to the corporation, where, as here, the officer commits the fraud in the course of his employment and for the benefit of the corporation. *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 26 F.3d 340, 358 (3d Cir. 2001).  Under the "sole actor" exception to the adverse interest rule, even in the complete absence of a benefit to the corporation, the agent's knowledge and actions are imputed to the principal where the principal and agent are one and the same." *Thabault v. Chait*, 541 F.3d 512,527 (3d Cir. 2008)(holding the sole actor exception required the application of the *in*

---

[8] Whether a receiver is subject to defenses good against the corporation in receivership is a matter of state law. *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) (in lawsuit alleging professional negligence and breach of fiduciary duty, state law, not federal law, governed question of whether knowledge by officers acting against the corporation's interest will be imputed to FDIC when it sues as receiver of corporation).

[9] To the extent the law in Illinois and Pennsylvania differ on Counts III-V and *in pari delicto*, Pennsylvania's choice of law analysis would apply and consider factors such as: (1) the place where the parties relationship was centered; (2) the state where the defendants received the alleged benefit or enrichment; (3) the location where the act bestowing the enrichment or benefit was done; (4) the parties domicile residence, place of business, and place of incorporation, and (5) the location where physical things related to the claim were located at the time.  *Power v. Lycoming Engines*, 328 Fed. Appx. 121, 126 (3d Cir. 2009).  The Moving Defendants were incorporated in Pennsylvania, performed their work in Pennsylvania, and centered their relationship in Pennsylvania.  Thus, Pennsylvania law applies to Counts III-V and the application of *in pari delicto* to those claims.

8281861.1

*pari delicto* doctrine regardless of whether the agent's conduct was adverse to the principal's interests).  The rationale for this rule is that the "sole actor" agent has no one to whom the agent can impart the agent's knowledge, or from whom the agent can conceal it, and therefore the corporation must bear the responsibility for allowing an agent to act without accountability.

The Complaint alleges that "Courtright, as principal and President, controlled and operated TGC as a means to carry out the fraudulent scheme" and that "TGC was under the control of Courtright" until the Receiver was appointed.  Compl. ¶ 38.  The Receiver alleges that TGC made transfers "at Courtright's direction, as a result of his fraudulent domination, adverse interest in, and control of TGC…."  Compl. ¶ 39.  As a result, the Receiver has alleged that TGC was essentially the alter ego of Courtright and that he was the sole actor.

Courts have applied the doctrine of *in pari delicto* to bar an SEC receiver from recovering tort damages in similar Ponzi scheme cases.  In *Knauer v. Jonathon Roberts Fin. Group Inc.*, 348 F.3d 230, 236-38 (7th Cir. 2003), the SEC Receiver pursued claims against third parties alleging that they were responsible for losses incurred by the receivership entity. *Id.* at 232. Specifically, the receiver sued broker dealers for aiding and abetting claims alleging they were responsible for facilitating the Ponzi scheme conducted by the corporate entities' principals.  *Id.*  The Court found that the third-party defendants, who were not personally enriched by the Ponzi scheme transactions, should not be liable to the company, which was deeply complicit in the scheme.  *Id.* at 238.  Essentially, the Court found that *in pari delicto* applied to the tort claims because the defendants were only alleged to have benefitted indirectly by providing services to the company being used to perpetuate the Ponzi scheme.  *Id.*

Other courts have held that tort claims for aiding and abetting can be dismissed based on the doctrine of *in pari delicto*.  *In re Wiand*, 2007 WL 963162 at *14 (M.D. Fla. Jan. 12, 2007);

8281861.1

*In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d at 64 (affirming dismissal on *in pari delicto* grounds of liquidating trustee's aiding and abetting breach of fiduciary duty claims against defendant banks and related entities); *Hays v. Pearlman*, 2010 WL 4510956, at *7 (D.S.C. 2010)(Plaintiff receiver's claims are barred by the doctrine of *in pari delicto*); *Baena v. KPMG LLP*, 453 F.3d 1, 4 (1st Cir 2006) (affirming dismissal of claims that accountants knowingly tolerated corporate entity violating accounting practices on *in pari delicto* grounds).  The Receiver's tort claims against Moving Defendants should be dismissed because the allegations in the Complaint demonstrate that TGC was engaged in fraud and the Receiver cannot benefit from TGC's fraud.  The appointment of the Receiver on behalf of TGC does not make the company any less culpable for its conduct than a corporate change in control through a sale.  The Moving Defendants provided services to TGC pursuant to a verbal contract and should not be forced to answer for TGC's fraud on its investors.

Furthermore, any claims for aiding and abetting the torts committed by TGC through Ken Courtright belong to TGC's investors, not TGC itself.  *See*, *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306–07 (11th Cir. 2020) (holding that receiver pursuing tort claims against third parties lacked standing because the corporation, "whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated.") *citing O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1203 (11th Cir. 2003).  It is the investors, not TGC, that was injured by the corporation's alleged Ponzi scheme.

## IV.    <u>CONCLUSION</u>

Based on the foregoing reasoning and authority, Moving Defendants hereby respectfully request that this honorable Court dismiss the Receiver's Complaint with prejudice.

8281861.1

BARLEY SNYDER

Date:  March 12, 2021                    By: */s/ Matthew M. Hennesy*
                                             Matthew M. Hennesy, Esquire
                                             Court I.D. No. 307020
                                             *mhennesy@barley.com*
                                             Luke T. Weber, Esquire
                                             Court ID No. 311796
                                             *lweber@barley.com*
                                             126 East King Street
                                             Lancaster, PA  17602
                                             Telephone:  717-299-5201

                                             *Counsel for Defendants Conklin Web*
                                             *Properties LLC, Conklin Media, LLC, Conklin*
                                             *& Courtright LLC, Dave Conklin, Jodi*
                                             *Conklin, Emily Lasko and Haley Hirthler*

18

## CERTIFICATE OF SERVICE

The foregoing document has also been filed electronically and is available for viewing and downloading on the ECF System.

Stephen D. Goldblum, Esq.
SEMANOFF ORMSBY GREENBERG & TORCHIA, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006

Kenneth Dante Murena, Esq.
kmurena@dvllp.com
Christine M. Dimitriou, Esq.
cdimitriou@dvllp.com
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

BARLEY SNYDER

Dated: March 12, 2021                    By:  */s/ Matthew M. Hennesy, Esquire*
                                          Matthew M. Hennesy, Esquire
                                          Court I.D. No. 307020
                                          *mhennesy@barley.com*
                                          Luke T. Weber, Esquire
                                          Court ID No. 311796
                                          *lweber@barley.com*
                                          126 East King Street
                                          Lancaster, PA 17602
                                          717-299-5201
                                          Fax: 717-291-4660

                                          *Attorneys for Defendants Conklin Web Properties LLC, Conklin Media, LLC, Conklin & Courtright LLC, Dave Conklin, Jodi Conklin, Emily Lasko and Haley Hirthler*