IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TODAY'S GROWTH CONSULTANT, INC.<br>(dba THE INCOME STORE)<br><br>and<br><br>KENNETH D. COURTRIGHT, III,<br><br>Defendants. | Civil Action No. 1:19-cv-08454<br>(filed in the United States District<br>Court, Northern District of Illinois) |
| MELANIE E. DAMIAN, AS RECEIVER OF<br>TODAY'S GROWTH CONSULTANT, INC.<br>(dba THE INCOME STORE),<br><br>Plaintiff,<br><br>v.<br><br>CONKLIN WEB PROPERTIES, LLC d/b/a<br>CONKLIN MEDIA, CONKLIN MEDIA LLC,<br>CONKLIN & COURTRIGHT LLC,<br>PROSPECT MX, LLC, DAVE CONKLIN,<br>JODI CONKLIN, EMILY LASKO<br>and HALEY HIRTHLER<br><br>Defendants. | Civil Action No.  20-cv-06297 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CONKLIN WEB
PROPERTIES LLC, CONKLIN MEDIA LLC, CONKLIN & COURTRIGHT, LLC
AND DAVE CONKLIN'S MOTION TO DISMISS COMPLAINT**

Plaintiff, Melanie E. Damian, in her capacity as Receiver of Today's Growth Consultant, Inc. (d/b/a The Income Store) (the "Plaintiff" or "Receiver"), responds in opposition to Defendants' Motion to Dismiss Complaint [ECF Nos. 18 and 18-1], and states:

## I. INTRODUCTION

The Securities and Exchange Commission ("SEC") brought an enforcement action for violations of securities laws and operation of a Ponzi Scheme against Kenneth D. Courtright III ("Courtright") and Today's Growth Consultant, Inc. (d/b/a The Income Store) ("TGC"). The Receiver filed this action as an ancillary proceeding to the underlying SEC enforcement action asserting fraudulent transfer and unjust enrichment claims (in the alternative), on behalf of the receivership estate of Today's Growth Consultant, Inc. (d/b/a The Income Store) (the "TGC Estate"), against the Defendants Conklin Web Properties, LLC d/b/a Conklin Media, Conklin Media LLC, Conklin and Courtright LLC (collectively, the "Conklin Entities"), Prospect MX, LLC, and Dave Conklin ("D. Conklin").[1]  Thereafter, Defendants D. Conklin and the Conklin Entities (collectively, the "Defendants") filed a Motion to Dismiss Complaint (the "Motion") [ECF Nos. 18 and 18-1].

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is to accept all factual allegations in the complaint as true, and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984); *see also Egnotovich v. Greenfield Twp. Sewer Auth.*, 304 F. App'x 94, 97 (3d Cir. 2008). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Moreover, it is well

---

[1] On April 5, 2021, the Plaintiff voluntarily dismissed former defendants Jodi Conklin, Emily Lasko and Haley Hirthler without prejudice.  *See* ECF No. 20.

settled that it is improper for a court to decide a question of fact on a motion to dismiss for failure to state a claim. *See Dow v. Shoe Corp.*, 276 F.2d 165, 167 (7th Cir. 1960).

Defendants' Motion should be denied because Defendants either: (1) fail to correctly apply the law to claims brought by court-appointed receivers; (2) omit key facts which are pled in the Complaint in support of the Receiver's claims; or (3) improperly ask the Court to make factual inquiries and determinations as to whether the Receiver will prevail in her claims. The Receiver agrees that Count II of the Complaint should be amended due to the four-year statute of repose imposed by Illinois's Uniform Fraudulent Transfer Act ("Illinois UFTA") *only on the constructive fraudulent transfer claims* under UFTA 740 ILCS § 160/10(b), as further detailed *infra*.[2] Accordingly, Plaintiff will respectfully request leave to amend Count II of the Complaint to only seek to recover those transfers made to Defendants within the four-year statute of repose. Defendants' remaining arguments, however, are fatally flawed as summarized above and demonstrated below, and as such, Defendants' Motion should be denied.[3]

## II. ARGUMENT

### A. The TGC Estate, Having a Legal Identity Separate and Distinct from TGC, is a "Creditor" for Purposes of Fraudulent Transfer Claims.

Defendants first argue that the plain language of UFTA provides relief only to creditors of the debtor-transferor, and that because TGC is a debtor-transferor (and not a creditor of TGC), the Receiver cannot recover under UFTA. Defendants miss the mark, however, as they are

---

[2] As stated in the Motion, Defendants do not contest the application of Illinois law to the Receiver's fraudulent transfer claims because the transfers were made in Illinois by TGC as the debtor. *See* Motion at p. 4, n. 3. Pennsylvania's Uniform Fraudulent Transfer Act provides that claims for fraudulent transfer are governed by the law of the jurisdiction in which the debtor is located when the transfer was made – in this case, Illinois. *See*, 12 Pa. C.S. § 5110(b).

[3] Should the Court entertain such arguments now and find they have any merit, the Receiver would respectfully request leave to amend the Complaint to include additional allegations to address any pleading deficiencies.

incorrectly categorizing claims brought by the Receiver on behalf of the TGC Estate as claims of the enforcement action defendant TGC.  Here, the Receiver is bringing UFTA claims on behalf of the TGC Estate (a/k/a TGC the receivership entity), which is in fact a creditor of TGC, the fraudulent entity, for purposes of claims held by creditors, such as fraudulent transfer claims.

Notably, in their Motion, Defendants fail to even mention *Scholes v. Lehmann*, the seminal case conferring standing on receivers to bring fraudulent transfer claims, decided in the Seventh Circuit, applying Illinois law, and adopted by courts across the country.  56 F.3d 750 (7th Cir. 1995).  Instead, Defendants go out of their way to cite inapposite and overturned cases not even applying Illinois UFTA.  Defendants even cite a Third Circuit case (completely unrelated to fraudulent transfer/unjust enrichment claims) where the Court reasoned that "[a] receiver no doubt has standing to bring a suit on behalf of the debtor corporation against third parties who allegedly helped that corporation's management harm the corporation." *See Marion v. TDI, Inc.*, 591 F.3d 137, 147 (3d Cir. 2010).  That is exactly what Defendants did here.  They helped Courtright defraud investors by working hand-in-hand with Courtright for a decade to develop and operate the business of TGC, create the marketing materials, and train the marketing team that, among other things, lured in investors.

What Defendants fail to inform this Court of is that, as clearly set forth in *Scholes v. Lehmann*, a Receiver has standing to pursue fraudulent transfer claims because the receivership entity in whose shoes the Receiver stands is deemed to be creditor of the Ponzi scheme or other fraudulent enterprise that was placed in receivership. *See* 56 F.3d 750 (7th Cir. 1995).  Indeed, courts have determined that a receivership entity has a legal identity that is separate and distinct from the enforcement action entity defendant. *See Wiand v. Lee*, 753 F.3d 1194, 1202-03 (11th Cir. 2014) (adopting *Scholes v. Lehmann* and holding that "the Receiver has standing to sue on

behalf of the receivership entities because they were harmed by their principal when he transferred profits to investors. . . from the principal investments of others for the unauthorized purpose of continuing the Ponzi scheme."). Further, in *Wiand*, the Court holds that "[a]lthough the receivership entities were the instruments of [their principal's] fraud, they were distinct legal entities whose purpose was to use client funds to invest in securities, and they were harmed when [the principal] diverted the funds for unauthorized uses." *Id*.

Such determinations have served as the basis for courts' deeming a receivership estate to be a creditor of the entity defendant for purposes of claims held by creditors of the entity, such as fraudulent transfer claims:

> Applying [*Scholes v.*] *Lehmann* to FUFTA, the receivership entities became 'creditors' of [principal] at the time he made the transfers of profits to [defendant] and others because, as FUFTA requires, they had a 'claim' against [the principal]. They had a 'claim' against [the principal] because he harmed the corporations by transferring assets rightfully belonging to the corporations and their investors in breach of his fiduciary duties, and a 'claim' under FUFTA includes 'any right to payment' including a contingent, legal, or equitable right to payment. . . . The Receiver's claim thus fits within the statutory language of FUFTA, which requires the existence of a creditor and a debtor.

*Wiand v. Lee*, 753 F.3d at 1202-03 (11th Cir. 2014) (footnote omitted). Moreover, in *Carney v. Montes*, 2014 WL 671263 at *8 (D. Conn. Feb. 21, 2014), the Court, addressing whether the receiver could bring a fraudulent transfer action, noted:

> [It] will turn on whether [the receiver] represents the transferor only or also represents a creditor of the transferor. . . . [W]hen transfers are made by corporations that are completely controlled by the wrongdoer, 'the transfers were, in essence, coerced.' . . . The corporation then becomes the creditor in the coerced transaction and a receiver for the coerced corporation has standing to claw back the transfers.

*Id*. The *Carney* Court ultimately concluded that the receiver had standing to bring a fraudulent transfer action on behalf of the receivership estate as a creditor of the entities before they were placed in receivership. *See id.*

Similarly, in *Janvey*, also citing *Scholes v. Lehmann*, the Fifth Circuit held that the receiver of assets of a Ponzi scheme perpetrator has standing to bring Texas UFTA fraudulent transfer claims on behalf of the perpetrator's corporations to recover proceeds of the Ponzi scheme that perpetrator had contributed to political committees, finding that:

> [A] federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors, but the knowledge and effects of the fraud of the principal of a Ponzi scheme in making fraudulent conveyances of the funds of the corporations under his evil coercion are not imputed to his captive corporations. Thus, once freed of his coercion by the court's appointment of a receiver, the corporations in receivership, through the receiver, may recover assets or funds that the perpetrator fraudulently diverted to third parties without receiving reasonably equivalent value.

*Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F. 3d 185, 189-92 (5th Cir. 2013).

Here, as in *Wiand*, *Carney* and *Janvey*, the transfers were made by TGC – a corporation that was completely controlled by Courtright (the wrongdoer), and thus "coerced" into making the fraudulent transfers to Defendants. As such, TGC, now a receivership entity, became the creditor in the coerced transaction and TGC's Receiver has standing to claw back the transfers made to D. Conklin and the Conklin Entities.

Accordingly, the Receiver undoubtedly has standing under applicable case law to bring all of the TGC Estate's claims against Defendants. Defendants' motion to dismiss as to Counts I and II should be denied.

### B. The Complaint Provides Sufficient Factual Support to Meet the Pleading Requirements of Rule 9(b).

Defendants next allege that the Complaint lacks the factual support and specificity required by Rule 9(b). In their Motion, however, Defendants conveniently omit allegations that are indeed pled in the Complaint. Regarding the Receiver's aiding and abetting claims, Defendants state that the Complaint "includes conclusory allegations that Conklin knew about

TGC's fraud and substantially assisted the fraud, but fails to assert any specific facts that indicate how a third party consultant would have such knowledge." *See* Motion at p. 8-9. This is simply an incorrect statement, as the Receiver alleges in the Complaint that D. Conklin was the Chief Marketing Officer ("CMO") for TGC, not simply a third-party consultant. *See* Compl. at ¶ 10. And, the Receiver also included facts as to how D. Conklin aided and abetted the fraud by virtue of being TGC's CMO and by committing acts such as overseeing all of TGC's marketing, which marketing was used to, among other things, lure in investors, and leading the build-out of TGC's office in Quarryville, PA, from where the fraudulent enterprise was partially operated. *See* Compl. at ¶¶ 8-11, 52 and 94 and Ex. I to the Complaint.

Specifically, the Complaint alleges that in D. Conklin's role as CMO for TGC, as well as his roles as sole owner of Conklin Web Properties and Conklin Media, Defendant D. Conklin and/or his companies "oversaw all marketing for TGC and provided consulting and training services for TGC and its employees" including "hiring and training the marketing team and assisting in the office build out for Quarryville, PA." *See* Compl. ¶¶ 8-11, 52, 94 and 100 and Ex. I. The Complaint further alleges that, through these roles, Defendant D. Conklin assisted Courtright in perpetuating the fraudulent scheme and Ponzi scheme, for the nearly ten-year period from 2010 through 2019, "by marketing TGC to investors, and even launching an office in Quarryville, PA to market specific websites for TGC, all while knowing that the websites generated substantially less than what was being paid to TGC's existing investors." *Id.* Yet, none of these detailed allegations are mentioned in Defendants' Motion.

Defendants' arguments regarding the Receiver's alleged failure to plead "facts upon which [D. Conklin] could be considered an alleged insider" fails as well. Under ILSC § 160/2, the term "insider" includes, if the debtor is a corporation: a director of the debtor, an officer of

the debtor, a person in control of the debtor, or a relative of the general partner, director, officer, or person in control of the debtor. *See id.* Again, the Receiver alleges in the Complaint that D. Conklin was the Chief Marketing Officer – and thus an officer or manager – for TGC. *See e.g.*, Compl. ¶ 10. The Receiver understands that Defendants now wish to distance themselves from Courtright and TGC, but the truth is, as alleged in the Complaint, Courtright and D. Conklin worked together so closely that they formed Conklin & Courtright to launch a marketing agency together and TGC transferred to Defendants more than $1.5 million, the majority if not all of which was derived from TGC's investors. *Id.* at ¶¶ 42-50 and 53. Yet again, Defendants completely omit that the Receiver pled these allegations, arguing in the Motion that D. Conklin "was not an employee or officer of TGC." *See* Motion at p. 10.

Ultimately, Defendants fail to recognize, let alone address, the Receiver's allegations that D. Conklin was the CMO, Courtright's business partner and undoubtedly an insider. Instead, Defendants are asking the Court to make a factual determination as to whether D. Conklin was the CMO for TGC or if his role was limited to that of a third-party consultant. Defendants' attempt to invoke factual matters outside of the four corners of the Complaint would require the Court to make factual determinations, or construe factual matters in Defendants' favor, which would be inappropriate for purposes of the instant Motion. *See, e.g., Tobey v. Chibucos*, 890 F.3d 634, 641 (7th Cir. 2018) (noting that "when defendants dispute facts on a motion to dismiss, the facts as alleged by the plaintiff are presumed to be true."). And, as detailed herein, there is substantial factual support for Plaintiff's claims and negating Defendants' arguments, and such an inquiry, if any, would be appropriate at a later stage in the case.

### C. The Complaint Alleges Sufficient Facts to Support the Receiver's Fraudulent Transfer Claims.

Defendants' arguments under Section "C" of their Motion fail for the same reasons. Again, Defendants fail to address a key fact — that the Receiver alleges D. Conklin was the Chief Marketing Officer, and thus an officer or manager, of TGC, which classifies D. Conklin as an "insider" under ILSC § 160/2. Additionally, Defendants mischaracterize the Receiver's allegations in the Complaint, stating that "[a]ll of the claims in the Complaint are based on TGC's alleged commission of a fraudulent Ponzi scheme from 2017 – 2019." *See* Motion at p. 10. Rather, the Complaint alleges that the Ponzi scheme operated from *at least* 2017 – 2019. *See* Compl. ¶¶ 42-50. The Receiver alleges that Courtright operated TGC as a fraudulent scheme at all times material to this Complaint (not just beginning in 2017) and made the transfers to Defendants pursuant to his fraudulent domination of TGC. *See id*. ¶¶ 38-39. Indeed, Defendants were involved with TGC's scheme from the very beginning (since 2010) developing the initial marketing strategy with Courtright. Moreover, in Count I of the Complaint, the Receiver also alleges that all of the transfers to Defendants were made with intent to hinder, delay or defraud. *See id*. ¶ 69.

The Receiver also alleges that Defendants' services to TGC were used to perpetuate a fraud on investors and recruit new investors thereby increasing TGC's liability to investors and not providing reasonably equivalent value (or any value) to TGC. *See id*. ¶ 55 and 84. Such allegations are based on evidence of Courtright's fraud on TGC investors and Defendants' involvement therewith as far back as 2010. Accordingly, the Complaint contains all allegations necessary to plead the fraudulent transfer claims. Nevertheless, instead of taking those allegations as true, Defendants are asking the Court to make factual determinations as to whether D. Conklin was solely a third-party consultant, or to construe factual matters in Defendants'

favor, which are inappropriate at this stage of the litigation. *See Dow v. Shoe Corp.*, 276 F.2d 165, 167 (7th Cir. 1960); *Tobey*, 890 F. 3d at 641.

### D. Defendants' Arguments regarding the Receiver's Claims for Constructive Fraudulent Transfer and Unjust Enrichment Hinge on Questions of Fact, which are Improper for a Court to Decide on a Motion to Dismiss.

Defendants' arguments in Section "D" of their Motion in purported support of dismissal of the Receiver's claims for constructive fraudulent transfers are mere denials (*i.e.*, "the Receiver's bald-face conclusion that Defendants provided no reasonable equivalent value to TGC, is false."). *See* Motion at p. 11. Defendants provide no viable reasons as to why Count II of the Complaint regarding constructive fraudulent transfers should be dismissed under Rule 12(b)(6), and simply deny that TGC did not receive reasonably equivalent value for the "services" provided by D. Conklin and the Conklin Entities – which is a factual inquiry and is thus inappropriate here.

Additionally, Defendants cite *Liebowitz v. Parkway Bank & Trust Co. (In re Image Worldwide)*, 139 F.3d 574 (7th Cir. 1997), arguing that because TGC allegedly received "indirect benefits" from D. Conklin and the Conklin Entities, the Receiver's allegations for constructive fraudulent transfer fail. First, the very case cited by Defendants states that whether "reasonably equivalent value" was received in a transaction is "a **question of fact**" and that "generally, a court will not recognize an indirect benefit unless it is 'fairly concrete.'" *See Liebowitz* 139 F.3d at 576, 578 (emphasis added). Second, Defendants are mistakenly conflating the terms "reasonably equivalent value" with "indirect benefits" as if a finding of "indirect value" automatically means that reasonably equivalent value was given — it does not. *See Liebowitz*, 139 F.3d at 582 (finding that the bankruptcy court properly held that while the appellee debtor received an indirect benefit from the transaction because it stayed in business, it

did not receive reasonably equivalent value). Defendants are, once again, improperly requesting that the Court make factual determinations in favor of Defendants in a motion to dismiss.

Defendants' arguments regarding the Receiver's claims for unjust enrichment also fail. Defendants allege that "there are no allegations indicating how the defendants had knowledge of the fraud such that their retention of the transfers would be unjust." *See* Motion at p. 13. Yet again, Defendants completely omit that the Complaint alleges that D. Conklin was the CMO, and thus an officer and/or manager of TGC. *See* Compl. at ¶ 9. Further, Conklin's own correspondence to the SEC admits that he, as sole owner of the Conklin Entities, provided significant marketing services for TGC and oversaw many of TGC's websites as well as the build-out of TGC's office in Quarryville, PA. *See* Compl. at ¶¶ 51-52. Through these roles, D. Conklin and the Conklin Entities had knowledge of, and substantially assisted in perpetuating, TGC's fraud. As such, Defendants' Motion to dismiss Counts II and III for failure to state a claim should be denied.

### E. The Receiver Will Request Leave to Amend Count II of the Complaint to Seek to Recover Only Those Transfers Not Time-Barred by the Statute of Repose.

Under Section "E" of their Motion, Defendants note that UFTA imposes a four-year statute of repose *only on constructive fraudulent transfer claims* under UFTA 740 ILCS § 160/10(b). Accordingly, the Receiver will respectfully move this Court for leave to amend Count II of the Complaint to seek to recover only those transfers which are not time-barred by the statute of repose. Because Count I of the Complaint will remain the same, the proposed amendment will not reduce the dollar amount of recoverable transfers sought in the Complaint.

### F. The Receiver's Fraudulent Transfer Claims Are Not Barred by the *In Pari Delicto* Doctrine.

Defendants argue that the Receiver's claims are barred by the doctrine of *in pari delicto*. Defendants' assertion of that defense is wholly unsupported by Illinois law and by case law in the Seventh Circuit.[4]  *See Scholes*, 56 F.3d at 754.  Indeed, the Seventh Circuit has held that a wrongdoer's bad acts must not be imputed to a subsequent independent receiver to bar the receiver's recovery claims based on the *in pari delicto* doctrine, as the receiver is an involuntary successor appointed by a court of equity to protect the interests of defrauded investors:

> [T]he wrongdoer must not be allowed to profit from his wrong . . . [t]hat reason falls out now that [the wrongdoer] has been ousted from control of a beneficial interest in the corporations. The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more [the wrongdoer's] evil zombies. Freed from his spell, they became entitled to the return of the moneys – for the benefit not of [the wrongdoer] but of innocent investors . . . .

*Scholes*, 56 F.3d at 754; *See also Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 236 (7th Cir. 2003) (noting that an exception to the *in pari delicto* doctrine exists for a receiver seeking to recover diverted funds from the beneficiaries of those diversions).  As such, the Receiver has standing to pursue, and is not barred by the *in pari delicto* doctrine from pursuing the TGC Estate's claims against beneficiaries of diverted funds (here, the Defendants).

---

[4] Defendants concede that Illinois law applies to the fraudulent transfer claims in Counts I and II of the Complaint and therefore to their *in pari delicto* defense. *See* Motion at p. 4.  In addition, the Receiver has pled the aiding and abetting claims under Illinois law.  Defendants now wish to apply Pennsylvania law to the aiding and abetting claims and to the *in pari delicto* defense to those claims. A determination of the appropriate choice of law for the aiding and abetting claims will require a factual analysis of evidence contained outside of the Complaint to determine where Defendants' misconduct and resulting harm occurred, where TGC operated from at the time of Defendants' misconduct and which state has a greater interest in the subject of the claims. *Pet Gifts United States, LLC v. Imagine This Co., LLC,* 2015 U.S. Dist. LEXIS 16348, *16, (N.J. Dist. 2015) (finding that a choice of law determination on any of Plaintiff's claims would be premature at the motion to dismiss stage of the litigation and postponing the analysis until after the parties have engaged in discovery on this issue).  Defendants' Motion to Dismiss is the improper vehicle to determine the choice of law issues.  Regardless, Defendants have failed to establish that Pennsylvania law or the case law in this Circuit supports the application of *in pari delicto* to bar the Receiver's claims.

### G. The Receiver's Aiding and Abetting Claims Are Not Barred by the *In Pari Delicto* Doctrine.

Finally, Defendants argue that the Receiver is barred by the doctrine of *in pari delicto* from recovering damages for her aiding and abetting claims against Defendant D. Conklin (Counts IV and V of the Complaint), and, in support, cite *Knauer v. Jonathan Roberts Fin Group Inc.*, 348 F. 3d 230, 236-38 (7th Cir. 2003).  Defendants' reliance on *Knauer,* however, is misplaced because the *Knauer* Court noted (and Defendants' Motion concedes) that the defendants were only alleged to have benefited **indirectly** by the company being used to perpetuate the Ponzi scheme, and that if the defendants had benefited directly, as in *Scholes*, a different conclusion would likely have been reached:

> The principal issue is whether we find more appropriate here the general Indiana rule or the exception to that rule.  **If the case before us involved the voiding of a fraudulent conveyance**, as in *Scholes* or the Indiana cases just cited, **we would likely apply *Scholes* and the Indiana law favoring exceptional treatment of receivers in those circumstances.**  This case, however, presents a different equitable alignment.  **The key difference, for purposes of equity, between fraudulent conveyance cases such as *Scholes* and the instant case is the identities of the defendants.  The receiver here is not seeking to recover the diverted funds from the beneficiaries of the diversions (e.g., the recipients of Douglas's transfers in *Scholes*).  Rather, this is a claim for tort damages from entities that derived no benefit from the embezzlements**, but that were allegedly partly to blame for their occurrence.

*Knauer*, 348 F.3d at 236 (emphasis added).  Thus, the crux of the analysis by the *Knauer* Court was not whether the claims were in tort (as Defendants suggest in their Motion), but on the *identity* of the defendants.  Here, there is no question that Defendant D. Conklin, individually and through his companies, directly benefitted from TGC's Ponzi scheme and received over $1,000,000 from TGC.

Moreover, the Third Circuit decision that Defendants rely on for the application of Pennsylvania law on *in pari delicto* acknowledges that Courts do not apply that doctrine to receivers, reasoning that:

> We certainly acknowledge that, in the receivership context, several courts have declined to apply *in pari delicto* to bar the receiver from asserting the claims of an insolvent corporation on the ground that application of the doctrine to an innocent successor would be inequitable. These courts have thought it proper to consider events arising after a corporation enters into receivership. *See, e.g., FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) ("While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on . . . [an] innocent entity that steps into the party's shoes pursuant to court order or operation of law."); *Scholes*, 56 F.3d at 754 (stating that "the defense of *in pari delicto* loses its sting when the person who is in pari delicto is eliminated").

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 358 (3d Cir. 2001); *see also Hecht v. Malvern Preparatory Sch.*, 2010 U.S. Dist. LEXIS 88181, *10-11 (E.D. Pa. 2010) (recognizing the *Scholes* case and its progeny explaining that applying *in pari delicto* to claims brought by the receiver would confound the doctrine's purpose). Further, this Court has held that a defendant was not entitled to dismissal of receiver's action, because the court could not ascertain whether a receiver could be subject to an *in pari delicto* defense without a full evidentiary record and more extensive briefing, noting that defendants pointed to no Third Circuit or Pennsylvania authority regarding the availability of the *in pari delicto* defense against a receiver. *See Bechtle v. Master, Sidlow & Assocs., P.A.*, 766 F. Supp. 2d 547, 549 (E.D. Pa. 2011). Similarly, here, consideration of Defendants' *in pari delicto* defense to the Receiver's aiding and abetting claims is improperly raised and wholly unsupported in the Motion to Dismiss. Accordingly, Defendants' request to dismiss the Receiver's aiding and abetting claims, along with her fraudulent transfer and unjust enrichment claims, on the basis of the doctrine of *in pari delicto* is unsupported by applicable law and should be denied.

### III. CONCLUSION

WHEREFORE, because Defendants' Motion is based on a series of arguments unsupported by applicable law, other than its statute of limitations argument as to Count II, the Receiver respectfully requests that the Court deny the Motion and grant her leave to amend Count II to seek recovery of only those transfers made during the applicable limitations period.

Respectfully submitted,

**DAMIAN & VALORI LLP**

*/s/ Kenneth Dante Murena*
Kenneth Dante Murena, Esq.
Florida Bar No. 147486
kmurena@dvllp.com
Christine M. Dimitriou, Esq.
Florida Bar No. 99381
cdimitriou@dvllp.com
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone: (305) 371-3960
Facsimile:  (305) 371-3965
*Admitted Pro Hac Vice*


**SEMANOFF ORMSBY GREENBERG & TORCHIA, LLC**

*/s/ Stephen C. Goldblum*
Stephen C. Goldblum, Esq.
2617 Huntingdon Pike
Huntingdon Valley, PA 19006
Telephone: (215) 887-0200
Email: sgoldblum@sogtlaw.com

*Counsel for Melanie E. Damian, Court-Appointed Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, a true and correct copy of the foregoing was served by email and CM/ECF on the following:

>Matthew Mark Hennesey, Esquire
>Barley Snyder LLP
>126 East King Street
>Lancaster, PA  17601
>mhennesey@barley.com

>SEMANOFF ORMSBY
> GREENBERG & TORCHIA, LLC


>BY:   /s/ *Stephen C. Goldblum*
>         STEPHEN C. GOLDBLUM

DATE:  April 9, 2021